HOLMES, Judge.
The plaintiff (Arns) sued the defendant (Patrick) for fraud. After an ore tenus hearing, the trial court entered a judgment for Arns and assessed his damages at $5,600. Patrick, through able counsel, now appeals and we affirm.
The dispositive issue on appeal is whether the evidence supports the conclusion that actionable fraud and/or misrepresentation was perpetrated by Patrick on Arns. Patrick also contends that Arns did not plead fraud with sufficient particularity.
The facts of this case are somewhat unusual. The facts in many fraud cases are where the seller has defrauded the buyer. *1016 In the case at bar, the seller has brought suit against the buyer for fraudulently inducing him to part with his vehicle without fair and just recompense.
Viewing the record with the attendant presumptions accorded the trial court’s decree, the following is pertinent:
Arns is in the trucking business in Arizona, where he lives. At the time in question, 1981, he owned and operated a 1972 freight truck with which he pulled a semitrailer hauling goods. The combined rig is commonly referred to as an “eighteen wheeler.” Arns bought the truck new for approximately $34,000.
Patrick is a qualified diesel mechanic with almost twenty years’ experience. In 1981, he operated a repair garage and service station in Grove Hill, Alabama. Mr. Arns and Mr. Patrick had occasion to meet when Arns was passing through Grove Hill on his way to Miami to deliver a load of perishables, to wit, lettuce.
On this occasion Arns’s truck broke down on the side of the road in Clarke County. Arns was put in touch with Patrick and Patrick towed the truck to his garage for repairs. There was some question as to what exactly was wrong with the truck. Both men thought the trouble might be a “blown” gasket.
Patrick was unable to start immediately on the truck due to work already undertaken. Arns was worried about his lettuce spoiling and he was understandably anxious to have his truck repaired. In order to cut down on the time spent on repairing the truck, Arns worked three or four hours removing what parts he could to facilitate Patrick’s access to the suspected trouble “spot.” It was late afternoon before Patrick could finally start working on the vehicle.
Arns eventually realized that the truck would not be repaired in time to save his produce, so with Patrick’s help, he rented another truck to complete his journey to Miami. Arns testified that when he left, he authorized Patrick to determine what was wrong with the truck and if the problem turned out to be blown gaskets to repair it.
After making his delivery in Miami, Arns called Patrick to learn the status of his truck. Patrick told Arns that he had a buyer for the truck and Arns would receive $9,500 from a total $12,000 sales price if he agreed to sell. According to Arns, nothing was said about the condition of the truck as far as what was needed to repair the vehicle.
Patrick informed Arns on his return that he had performed certain tests on the engine and the motor had two cracked heads and a cracked block. Patrick also told Arns that the truck would need a new engine to be operable again and that he had already performed some $3,600 worth of work on the truck. Both men agreed that a new engine would cost in the neighborhood of $12,500. The truck’s engine was at this point disassembled or broken down and parts were strewn around and about the truck and garage. Needless to say, it appeared to Arns at this point that the offer to buy the truck for $9,500 was no longer open.
At some point during the discussion, Patrick offered to forget the approximately $3,600 in repairs and labor already incurred and give Arns $1,600 for his truck “as is.” Arns did not have enough money to pay the bill or have the truck repaired. Ultimately, Arns accepted Patrick’s offer and gave him a bill of sale in return for $1,600. Patrick later sold the truck, in virtually the same condition as it was when Arns sold to Patrick, to another party in the trucking business for $20,000. Suit followed upon Arns’s learning of the subsequent sale with results as indicated above.
Patrick’s first contention on appeal is that Arns did not plead fraud with sufficient particularity. We do not agree.
Arns’s complaint stated three counts, all involving the same set of facts and arising from the same incident. All three counts were grounded on a theory of fraud and misrepresentation. The complaint states sufficient facts to apprise Patrick of the *1017 time and circumstances of the misrepresentations and the facts misrepresented.
Briefly, Arns set forth in his complaint that his truck broke down, the date and place where his truck broke down, a description of the truck, and the fact that Patrick towed the vehicle to his garage. Arns’s complaint stated that Patrick represented that he was a qualified diesel mechanic, that Patrick represented he had checked the engine, that he had taken the motor apart and was in a position to know the true condition of the truck. Arns also alleged that Patrick knowingly misrepresented the condition of the truck by saying that it needed major repairs, including a new engine, that the motor in it was com-, pletely defective, and that the block and heads were cracked and it would cost over $12,000 to have the truck repaired.
Arns further alleged that Patrick knowingly misrepresented the condition of the truck by saying that it needed major repairs and a new engine for the purpose of inducing Arns to sell his truck. Arns’s complaint also stated, in essence, that Arns relied on the misrepresentations and sold the truck for $1,600 when the vehicle’s value was actually $20,000.
Arns’s complaint, to this court, set out the alleged fraud with sufficient particularity to comply with the rules of civil procedure, Rule 9(b), Alabama Rules of Civil Procedure. The purpose of the rule is to give fair notice to the opposing party so that he has adequate opportunity to defend. Winn-Dixie Montgomery, Inc. v. Henderson, 371 So.2d 899 (Ala.1979); appeal after remand, 395 So.2d 475 (Ala. 1981). It is not a requirement that every single fact involved in the incident be stated in the complaint. The rule only prohibits a general averment of fraud without sufficient facts to apprise the opposing party of the incidents that constitute the alleged fraud- Here there is sufficient particularity to inform the defendant of the incident from which fraud is alleged to have occurred.
Patrick next contends the evidence does not support a finding of fraud. Specifically, Patrick contends that Arns did not prove a false representation. We do not agree.
Our supreme court has outlined the elements of a cause of action sufficient to constitute legal fraud thusly:
“Regardless of whether the representations were made wilfully, recklessly or mistakenly, it has been held that there must be (1) a false representation, (2) the false representation must concern a material existing fact, (3) the plaintiff must rely upon that false representation, and (4) the plaintiff must be damaged as a proximate result....”
Winn-Dixie Montgomery, Inc. v. Henderson, 395 So.2d 475, 476 (Ala.1981).
It is appropriate at this time to also state this proposition of law:
“The presence or absence of fraud is a question to be determined by the trier of fact. To the extent fraud is a factual question, the trial court having tried the case ore tenus, this court will indulge all favorable presumptions to sustain that court’s conclusion and it will be disturbed on appeal only if shown to be plainly erroneous or manifestly unjust.”
Roberts v. Peoples Bank & Trust Co. of Sylacauga, 410 So.2d 393, 395 (Ala.1982).
With the above guiding principles in mind, we find that there was evidence that would support a finding of a false representation of a material existing fact that is consistent with the trial court’s finding of fraud.
The false representation in the present case concerns the condition of the truck’s engine. Arns contends that Patrick represented to him that the engine was in such shape as to render the truck relatively worthless. Patrick contends that Arns failed to prove at trial that any of the representations were false.
The evidence and the reasonable inferences therefrom would support a conclusion by the trier of facts that the truck was not in the condition that Patrick represented.
*1018 Without going into great detail, the following supports the trial court’s conclusion that a material misrepresentation did occur.
Patrick was in the better position at the time to know what diagnostic tests, if any, had been performed on the engine. There was testimony that Patrick told Arns that a certain test had been performed which revealed that the block was cracked. Although the testimony was in conflict, there was sufficient evidence from which the trier of fact could conclude that Patrick did not have the necessary equipment, nor the time, to perform that particular test. There was also testimony that sometimes a crack in the block can be too small to be seen with the unaided eye. From this the trial court could have concluded that at the time Patrick told Arns the block was cracked there was no way he could actually have known the condition of the engine. Put another way, Patrick represented that the block was cracked and the engine worthless without actually knowing the truth of that statement. See International Resorts, Inc. v. Lambert, 350 So.2d 391 (Ala.1977) (an action will lie for damages when one makes representations relied upon by another without knowing or earing whether they are true or false).
Even if one concludes that Patrick did indeed perform this particular test, there are two possibilities. Patrick performed the test and either the block was cracked or the block was not. From all of the evidence it appears that the former possibility is the least likely.
There was evidence from which the trial court could conclude that Patrick did not have $3,600 in work already in the truck. This has two ramifications. Primarily, this adds to the expense of repairing the truck, thereby putting more pressure on Arns to sell. Arns was a stranger many miles from home and his truck was broken down and the engine disassembled. Certainly the thought of a $3,600 mechanic’s lien would be a heavy consideration under these circumstances. Secondarily, this adds to the possibility that Patrick represented the engine to be in worse shape than he was in a position to know as true. This $3,600 is in addition to the prospect of having to spend $12,500 for a new engine to have the truck running. In essence, Patrick represented to Arns that it would cost $16,000 to get his truck on the road again.
The strongest evidence that there was a knowingly made misrepresentation is the fact that Patrick, a short time after buying the truck, sold the vehicle “as is” to a person in the trucking business for $20,000. There was testimony that the truck at that time, 1981, would be worth $20,000 if it were operating properly. By Patrick’s own representations it would take at least $16,-000 to make the truck run again. Surely no one in the trucking business would spend $36,000 for a ten-year-old truck that cost $34,000 brand new. From these circumstances the trial court could reasonably have inferred that the truck was not in the condition that Patrick represented to Arns, that the truck was in better condition, and that Patrick knowingly misrepresented that fact.
All persons are under a duty not to fraudulently misrepresent material facts to persons with whom they have business dealings. Huntsville Dodge, Inc. v. FuRNas, 361 So.2d 585 (Ala.Civ.App.1978).
Given the presumptions accorded the trial court’s decree and the principles of law enunciated previously, we find that there is sufficient evidence from which the trier of fact could conclude that actionable fraud was perpetrated on Arns by Patrick.
This case is due to be and is affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.