309 So.2d 119

**CONTINENTAL VOLKSWAGEN, INC.,**
**a corporation**

**v.**

**Charles Ray SOUTULLO.**

**Civ. 428.**

Court of Civil Appeals of Alabama.

Feb. 26, 1975.

Mylan R. Engel, Mobile, for appellant.

No brief for appellee.

HOLMES, Judge.

Appellant-defendant appeals from a jury verdict and judgment thereon against him for $8,000.

The complaint, as received by the jury, contained four counts. The first count alleges fraud on the part of appellant. The other three are based on alleged breach of warranties.

We find it necessary to set out in some detail the evidence, as revealed by the record.

Appellee and his wife, while on a Sunday drive, passed appellant's car lot and noticed a vehicle they liked. They visually inspected the vehicle, a used 1971 Volkswagen van with 23,935 miles, and found on the windshield the business card of used car salesman Dean Hagler.

They called Mr. Hagler the next day about purchasing the vehicle. Apparently, virtually all negotiations were carried out over the phone. The sale was actually consummated on March 26, 1973, for a cash price of $2,558.78, which included down payment and trade-in.

There is some dispute as to whether or not appellee drive the vehicle before actually closing the deal. Mr. Hagler claimed that he did, while appellee could not remember. In any event, appellee did drive it that day and then informed Mr. Hagler the car was "missing" somewhat.

Mr. Hagler testified that he informed appellee that the car had a thirty-day, 1,000 mile, 100% warranty and that appellee should drive it for a week and make a list of all things wrong and appellant would correct them.

Appellee, on the other hand, testified that when he informed Hagler the car was "missing," Hagler said it only needed to be driven some, but that if it did not straighten out to bring it back. Appellee testified, however, that he did not ask that the car be fixed that day.

The car was returned in a week and put in the repair shop for one day. Even after this, appellee testified the car was not only "missing" but also using oil heavily and he returned it a second time, approximately two weeks later. It was kept in the repair shop two days this time and after getting it back appellee testified that it "was some better in the running condition."

Sometime after this second repair job, on May 11, 1973, appellee took the car to another car dealer and had a diagnosis run. The person performing this service testified at the trial that in his opinion the vehicle was in "poor condition" and that it would cost a lot of money to have the vehicle repaired.

Even though appellee learned of the condition of the vehicle from the test, there is no direct evidence that appellee contacted appellant and informed it of this "poor condition." Witnesses for appellant testified they did not hear from appellee after their second repair attempt until the vehicle finally broke down, several months later. Appellee himself testified he did not remember contacting appellant after having the diagnosis made, and he admitted he did not know how he would expect appellant to make adjustments if he did not contact it.

A few months after May 11, the car finally "died." Appellee testified he was driving home from work when noticed something was wrong. He testified he saw a red light—apparently a warning device—light up, but that he continued to drive the car for some distance, approximately 5 miles. He then smelled something burning and stopped. His investigation revealed the fan belt had broken. His own personal attempts to repair it were unsuccessful and appellee had the vehicle hauled to a friend's service station.

The car remained at the service station for some weeks until, finally, it was towed to appellant's place of business by appellant, free of charge to appellee.

There is some dispute between appellee and appellant's witnesses as to why appellant towed the vehicle free of charge, and also a contradiction in the testimony as to whether appellee ordered the vehicle to be fixed. Suffice it to say for purposes of this opinion, that the vehicle remained on appellant's lot, unrepaired, until repossessed by the bank in October. At the repossession sale, appellant repurchased the

vehicle for $1,200. They then overhauled the motor completely because, according to the testimony of the manager of the used car division of appellant, the engine had been burned up as a result of being driven without a fan belt.

Appellant originally assigned twenty assignments of error, afterwards adding two more, pursuant to Supreme Court Rule 2(2), by permission of this court.

Appellant argues seven of these assignments in brief. We find the dispositive assignment of error to be that the learned trial court erred in refusing to grant appellant's motion for a new trial in that the verdict is contrary to the great weight of the evidence and that the jury verdict is excessive.

At the outset, we note that the jury verdict was for $8,000 and that the total cost of the vehicle was only $2,558.78. It is clear that substantial punitive damages were awarded by the jury. The only cause of action submitted to the jury which would support punitive damage award was the fraud allegation. See Treadwell Ford, Inc. v. Leek, 272 Ala. 544, 133 So.2d 24.

Appellant contends that the jury verdict is excessive in that even if the fraud allegation is proven there is no fraud so "malicious, oppressive, or gross" as to form a basis for the award of punitive damages. Appellee makes no response to this as he has not favored this court with a brief.

In his allegation of fraud, appellee alleges that he was fraudulently induced to buy the vehicle because of false and fraudulent representation by appellant's salesman that the motor "was in good working order."

The definition of legal fraud, as apparently appropriate in this instance, is found in Tit. 7, § 108, Code of Ala. (1940), which reads as follows:

"§ 108. Misrepresentations.—Misrepresentations of a material fact, made wilfully to deceive, or recklessly without

knowlèdge, and acted on by the opposite party, or if made by mistake and innocently, and acted on by the opposite party, constitute legal fraud."

The evidence in the record which tends to show any fraudulent misrepresentation comes from the testimony of appellee and of his wife.

Appellee's testimony is that Mr. Hagler told him that the vehicle was in "good condition" and that all it needed was to be driven some. Appellee's wife testified that Mr. Hagler made the remark that "it was in perfect condition," and all it needed was to be driven as it had been sitting up for several months.

 Even assuming that this is enough to establish legal fraud under Tit. 7, § 108, Code of Ala. (1940), in light of decisions by the supreme court of this state on the issue of fraud and punitive damage awards, it is not, under the facts of this case, enough to justify an award for punitive damages.

 Our supreme court made the following pertinent statements in Hall Motor Co. v Furman, 285 Ala. 499, 503, 504, 234 So.2d 37, 40, 41:

"In the often cited case of Caffey v. Alabama Machinery & Supply Co., 19 Ala.App. 189, 96 So. 454, it is pointed out that Section 108 is but a reflection of the general law on the subject of fraudulent misrepresentation, and that fraud being alleged, and established by the evidence, punitive damages may be recovered only if the fraud was malicious, oppressive, or gross, made with knowledge of its falseness, (or so recklessly made as to amount to the same thing), and made with the purpose of injuring the plaintiff. To the same effect see Boriss v. Edwards, 262 Ala. 172, 77 So.2d 909; Treadwell Ford Inc. v. Leek, 272 Ala. 544, 133 So.2d 24; J. Truett Payne Co. v. Jackson, 281 Ala. 426, 203 So.2d 443.

. . . . . .

"If a fraud is not perpetrated grossly, maliciously, oppressively, and with an intent to deceive, the damages to be recovered are such as will compensate for actual damages received. Foster v. Kennedy's Adm'r, 38 Ala. 359; Berry v. Wooddy, 16 Ala.App. 348, 77 So. 942."

In Pettus v. Shafer, 286 Ala. 625, 627, 244 So.2d 573, 575, an action also involving Tit. 7, § 108, of the Code, the supreme court quoted with approval the following statement made by that court in Maring-Crawford Motor Co. v. Smith, 285 Ala. 477, 233 So.2d 484:

" 'However, it appears under our decisions that the innocence or willfulness of a party in making a misrepresentation goes to the matter of damages to be awarded, for in an action of deceit punitive damages may not be awarded unless the fraud is gross, oppressive, and committed with an intent to injure. Boriss v. Edwards, 262 Ala. 172, 77 So.2d 909. Whether such representation is gross, oppressive, or committed with an intent to deceive, is dependent upon the facts of a particular case."

We point out that even if the appellee's cause of action is pursuant to Tit. 7, § 110 or § 111, Code of Ala. (1940), the same observation, as pointed out above, as they relate to punitive damages, would be equally appropriate. See Hall Motor Co. v. Furman, *supra*.

Looking at the facts of this particular case, we are of the opinion that there is no fraud so "gross, oppressive and committed with an intent to injury" such as to allow punitive damages.

We have already noted all the evidence revealed by the record which tends to indicate legal fraud. Further testimony of appellee reveals that, after having first seen the car, there was no question in appellee's mind that this was the car he wanted. He testified that all the negotiations were actually carried on over the phone. Appellee

also admitted that no pressure was exerted on him in purchasing the car. Testimony of Mrs. Soutullo, from the record, revealed that she and her husband had decided in their own minds to buy the car on the day they first saw it.

In light of this testimony by appellee himself and a witness on behalf, we found no evidence to support the award for punitive damages.

This court is aware that we could order a remittitur and affirm the case conditionally. See Hall Motor Company v. Furman, *supra.* We decline to do so in this case inasmuch as we are unable to ascertain the extent of appellee's damages.

 There is no proof of the amount of actual damages to appellee. All that is in the record is that the vehicle was purchased on March 26, 1973, for $2,558.78 by appellee and that it was repurchased in October for $1,200 by appellant. However, appellee had possession of the vehicle for several months. He testified that at the time it finally broke down it had approximately 29,000 miles on it. Thus, appellee had driven it over 5,000 miles.

The burden is on the plaintiff in an action for damages to furnish proof from which the jury can determine the amount of damages, if any, to which plaintiff is entitled and if plaintiff fails in this the jury cannot supply the omission by speculation. Seals Piano & Organ Co. v. Bell, 17 Ala.App. 331, 84 So. 779.

The amount of damages must be fairly proved and not left to guess or conjecture. Kershaw Mining Co. v. Lankford, 213 Ala. 630, 105 So. 896.

The trial judge in this case is one of our most able and distinguished circuit jurists, but, as has been stated before, even Homer nods. Therefore, in light of the excessive verdict award and the failure of appellee to adequately prove his actual damages, it is the opinion of this court that the learned trial judge erred in this instance in not awarding appellant a new trial.

The judgment is due to be and is therefore and accordingly reversed and remanded.

Reversed and remanded.

WRIGHT, P. J., and BRADLEY, J., concur.