This is an appeal by defendants from a judgment in favor of plaintiff for $5,500 and costs. We affirm.
Plaintiff Lora Furnas filed an action in the Circuit Court of Madison County against defendants Huntsville Dodge, Inc. and one of its salesmen, Mark Blevins, for misrepresentation in the sale of a used motor vehicle. The complaint alleged that during the negotiations for the sale of a 1973 Mazda automobile the defendants had represented to plaintiff that the engine of the automobile was in good condition and not in need of repair, and that, based on that representation, plaintiff purchased the automobile for $1,516 on January 5, 1976. The complaint further alleged that the engine of the automobile sold the plaintiff was, in fact, in bad condition and in need of repair.
Plaintiff's complaint alleged that the defendants wilfully, recklessly, or innocently misrepresented the mechanical condition of the car's engine, or that the defendants had withheld or concealed from plaintiff the fact that the car's engine was in bad condition. The complaint claimed damages in the amount of $35,000. Defendants answered with a general denial.
Trial was had on September 26, 1977 before the court and a jury. On the following day the jury returned a verdict in favor of plaintiff for the amount of $5,500. Defendants' motion for remittitur or a new trial was overruled by the trial court on November 4, 1977, whereupon the defendants perfected this appeal. Grounds for the motion *Page 587 
for a new trial are that the jury's verdict was excessive, and that the verdict was so excessive as to shock the conscience of the court and was the result of bias, passion and prejudice against the defendants.
The evidence in this case shows that the plaintiff Lora Furnas, nineteen years old, was an acquaintance of defendant Mark Blevins, a salesman for defendant Huntsville Dodge. Upon deciding to buy her first car, plaintiff asked Blevins to "be on the lookout" for a car for her. Blevins tried to sell plaintiff a Ford Pinto but the purchase price was too high. A week later Blevins informed plaintiff that Huntsville Dodge had for sale a 1973 Mazda with over 50,000 miles on it, and that plaintiff should come look at it. Because plaintiff was unable to come to defendants' place of business at that particular time, Blevins brought the car out to plaintiff's residence.
Plaintiff and her twenty-eight year old brother, Andrew Furnas, made inquiries of Blevins concerning the car's tires, transmission, and engine. Blevins told them that the transmission and engine were in "good running condition."
Plaintiff's brother and Blevins then gave the car a "test drive," with plaintiff following behind in her brother's car. During the test drive the transmission seemed to "act funny," and the three agreed to stop at Don Crews Mazda in order to investigate the problem. Plaintiff remained in her brother's car while Blevins went into the showroom to find a mechanic.
Don Crews and a mechanic checked out the problem which was apparently caused by the choke being out. Crews informed the three that the transmission was in good shape.
Crews testified that he recognized the particular car brought in by plaintiff's brother and Blevins, because of the car's color and the name of the previous owner as listed in the owner's manual. He had worked on the car two weeks earlier for the previous owner. At that earlier time he had determined that the car's engine was "blown" because the seals in the engine had deteriorated allowing the engine to overheat. Crews further testified that he related this information about the blown engine to the salesman, but not to plaintiff nor to plaintiff's brother. He also testified that he had no way of knowing whether or not the engine had been repaired in the interim between the time he had first determined that it was in bad condition and when plaintiff and her brother had brought it in for an inspection of the transmission problem.
Defendant Blevins testified that he had no personal knowledge of the car's mechanical history, that he himself was not a mechanic, and that neither Crews nor anyone else had ever told him that the car's engine was in bad condition. Blevins also testified that he had personally driven the car prior to the sale in order to assure that he was selling plaintiff a good car, that he would not have sold the car to plaintiff if he had thought the engine was in bad condition; and that plaintiff and her brother were free to question the mechanic at Don Crews Mazda to any extent they desired concerning the condition of the car.
Plaintiff purchased the car for $1,516 that evening after the test drive. The invoice and tag receipt listed plaintiff's brother, Andrew Furnas, as the legal owner of the car. But all parties to the transaction understood that the plaintiff, Lora Furnas, was purchasing the car for her own use, with her brother co-signing the note for the car. Plaintiff and her brother understood that Huntsville Dodge sold the car to her "as is," without any express or implied warranties, because the dealership at that time had no mechanics trained to work on foreign cars such as the Mazda.
Plaintiff encountered mechanical difficulties with the car that same evening. She had to add water to the radiator at that time, and "every day after that." Plaintiff decided to take the car to Don Crews Mazda, where she was informed that repairs would cost $395. Plaintiff then took the car back to Huntsville Dodge. Huntsville Dodge, having hired a mechanic who was trained to repair Mazdas, told plaintiff that they could fix the car, but that the repair would cost approximately $800. Plaintiff *Page 588 
left the car to be repaired. Huntsville Dodge allowed plaintiff free use of a new car while plaintiff's car was being repaired, even though they usually rented such cars to customers during repairs.
After a week or two plaintiff returned to Huntsville Dodge, where her car's engine had been disassembled. The new replacement engine had been ordered but had not yet arrived. Plaintiff demanded that the old engine be reassembled and put back in the car. After the engine was reassembled, plaintiff drove away in the car. Huntsville Dodge did not charge plaintiff for disassembling the old engine, nor for reassembling it upon plaintiff's demand.
Mr. Clyde Hughes, general manager of Huntsville Dodge at the time plaintiff bought the car, testified that he had no knowledge of the condition of the car until plaintiff brought the car in for repairs. He further testified that after the engine in plaintiff's car had been disassembled, and upon seeing that water had leaked into the cylinders, he offered to fix or replace the engine for free. Plaintiff specifically denied that this offer was made.
After leaving the premises of Huntsville Dodge, plaintiff drove the car to International Motor Cars. David K. Holland, a mechanic employed there, determined that the car's engine seals had deteriorated as a result of engine wear. The deteriorated seals allowed water to leak into the combustion chamber and caused the engine to overheat. Holland testified that this was a common problem with this particular model of car, and that it would be better to replace the engine rather than rebuild it. The parts needed to repair plaintiff's car were not ordinarily stocked in most automobile repair shops and had to be ordered from Gadsden.
On February 2, 1976 plaintiff put down a deposit for the work with International Motor Cars. The installation of the new engine was completed on March 1, 1976, and International Motor Cars charged plaintiff $355 for this repair.
After the new engine was installed, Huntsville Dodge offered to buy back the car from plaintiff for the original price of $1,516. Plaintiff refused this offer. Thereafter plaintiff continued using the car, experiencing a few minor problems, but otherwise receiving good service from the car for a year. After using the car for a year, plaintiff put the car in storage at her parents' home and moved to Hawaii. Thereafter her family occasionally drove the car until the engine was "shot again," rendering the car unusable.
Counts One, Two and Three of plaintiff's complaint are based on Code of Alabama 1975, § 6-5-101 [formerly Tit. 7, § 108, Code of Alabama 1940 (Recomp. 1958)], which provides:
 Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud.
Count Four of plaintiff's complaint is based on Code of Alabama 1975, § 6-5-102 [formerly Tit. 7, § 109, Code of Alabama 1940 (Recomp. 1958)], which provides:
 Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case.
Plaintiff's claims also find support in Alabama case law which imposes a duty of disclosure on defendants under these facts. All persons are under a duty not to fraudulently misrepresent material facts to persons with whom they have business dealings. Ringer v. First Nat'l. Bank of Stevenson,291 Ala. 364, 281 So.2d 261 (1973). Where, with intent to deceive, a party to a contract conceals material facts which good faith requires him to declare or disclose, it is the equivalent of false misrepresentation and fraudulent concealment. Southern Land Development Co. v. Meyer, 230 Ala. 40,159 So. 245 (1935).
The evidence supports the jury's verdict that defendants misrepresented a *Page 589 
material fact which induced plaintiff to purchase the automobile in question; consequently, plaintiff was entitled to recover the actual damages proximately caused by the misrepresentation. Hall Motor Co. v. Furman, 285 Ala. 499,234 So.2d 37 (1970). In this case plaintiff's actual damages were $355.62, i.e. the amount charged by International Motor Cars for the engine replacement.
However, defendants contend that the amount of damages awarded in excess of the actual damages, $5,145.38, was improperly allowed as punitive damages. We disagree with this contention.
The well established rule of law in Alabama regarding the award of punitive damages in cases of misrepresentation has recently been restated by the Alabama Supreme Court:
 [P]unitive damages are only allowed where a material misrepresentation is made knowingly and falsely, was relied on by the injured party, and the fraud was gross, malicious, oppressive and committed with an intent to injure.
Proctor Agency, Inc. v. Anderson, Ala., 358 So.2d 164 (1978).
The rule has been followed by the Alabama courts in numerous cases involving misrepresentations in the sale of motor vehicles. See, e.g., Hall Motor Co. v. Furman, supra; Harrelsonv. Gowin, Ala.Civ.App., 348 So.2d 789 (1977); Ron ShaferChevrolet v. Hires, Ala.Civ.App., 347 So.2d 1358 (1977);Continental Volkswagen, Inc. v. Soutullo, 54 Ala. App. 410,309 So.2d 119 (1975). In each of these cases the plaintiff was allowed to recover only actual damages for the misrepresentation made in the sale of the automobile. Punitive damages were not allowed, for there was no showing that the misrepresentation was gross, malicious, and oppressive, and that the misrepresentation was made with the intent to deceive the plaintiff. (Moreover, the facts in the cited cases are easily distinguishable from the facts in the case at bar.)
Imposition of punitive damages in cases of misrepresentation is discretionary with the jury, acting with regard to the enormity of the wrong and the necessity of preventing similar wrongs. Treadwell Ford, Inc. v. Leek, 272 Ala. 544,133 So.2d 24 (1961). Whether the misrepresentation is gross, malicious, and oppressive and committed with intent to deceive so as to authorize the award of punitive damages, is dependent upon the facts of the particular case. Maring-Crawford Motor Co. v.Smith, 285 Ala. 477, 233 So.2d 484 (1970).
Punitive damages have been allowed in cases involving misrepresentation in the sale of automobiles. In J. TruettPayne Co. v. Jackson, 281 Ala. 426, 203 So.2d 443 (1967), punitive damages were awarded where the seller of an automobile misrepresented to a buyer that the car being sold was "new," when in fact the car had been previously purchased by the seller from another dealership as a used demonstrator. InMobile Dodge, Inc. v. Ladnier, 45 Ala. App. 210, 228 So.2d 478
(1969), the seller misrepresented a used automobile as "new" to the buyer, when in fact the car had been previously sold by the seller to another buyer who had returned it after two months' use. The court upheld the award of punitive damages, stating that, in considering the undisputed facts and testimony in the case, the jury might fairly have drawn the inference that the misrepresentation was gross, malicious, oppressive, and committed with the intent to injure or defraud. Id. at 213, 228 So.2d at 480.
Likewise, in the case at bar, we believe that the evidence and the inferences to be gleaned therefrom support the jury's conclusion that punitive damages should be awarded. The record reveals that the jury heard testimony that prior to the sale of the automobile to plaintiff that the salesman was told that the engine was defective, yet he consummated the sale without informing the purchaser of this fact. Moreover, on appeal the presumption in favor of the correctness of the jury's verdict is strengthened when the trial court refuses to grant defendants' motion for a new trial. Byrd v. Fowler, 50 Ala. App. 596, 281 So.2d 647 (1973). Based on these facts and *Page 590 
presumptions, the judgment of the trial court is affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.