553 So.2d 537 (1989)
PACIFIC MUTUAL LIFE INSURANCE COMPANY
v.
Cleopatra HASLIP, et al.
87-482.
Supreme Court of Alabama.
September 15, 1989.
Rehearing Denied November 9, 1989.
*538 Ollie L. Blan, Jr., and J. Mark Hart of Spain, Gillon, Tate, Grooms & Blan, Birmingham, and Bruce A. Beckman of Adams, Duque & Hazeltine, Los Angeles, Cal., for appellant.
Charles E. Sharp and John F. Whitaker of Sadler, Sullivan, Herring & Sharp, Birmingham, for appellees.
Stephen D. Heninger of Heninger, Burge and Vargo, Birmingham, for amicus curiae The Alabama Trial Lawyers Ass'n.
SHORES, Justice.
The defendant, Pacific Mutual Life Insurance Company (hereinafter "Pacific Mutual"), appeals from judgments, entered after a jury trial, in favor of the plaintiffs, Cleopatra Haslip, Cynthia Craig, Alma Calhoun, and Eddie Hargrove.
All four plaintiffs are employees of Roosevelt City (hereinafter the "City"), a small incorporated community in western Jefferson County. As many small communities do, Roosevelt City allowed its employees to purchase a group health insurance policy through the municipality. Originally that policy was issued by Blue Cross-Blue Shield. Some months prior to 1981, however, Blue Cross cancelled the policy when several City employees dropped out of the plan, reducing the number of eligible employees participating in the plan below the minimum number of participants required by Blue Cross to maintain a group policy.
Lemmie Ruffin was a soliciting agent for Pacific Mutual. Ruffin sent a mail solicitation to the City asking if it was interested in discussing insurance. The City returned a card indicating that it was.
Ruffin first met with the mayor of the City, who gave him permission to solicit business from the City's employees. Before approaching the employees, Ruffin sought information about the employees *539 from the city clerk, Mabel Poindexter. As he was later to do with the plaintiffs, Ruffin approached Mrs. Poindexter, telling her that he was "with Pacific Mutual." He handed her a Pacific Mutual business card, and he explained that he had been told that the City employees needed hospital coverage. Testimony indicates that Ruffin never told Mrs. Poindexter or the plaintiffs that Pacific Mutual would not write health insurance.
In truth, while Pacific Mutual would issue individual life policies, it did not write group health policies for municipalities. Pacific Mutual did, however, allow its agents to broker business with other insurance companies, and Ruffin was a licensed agent of Union Fidelity Life Insurance Company (hereinafter "Union Fidelity"), which did issue group health insurance through municipalities. Accordingly, Ruffin submitted a proposal to the City on a Pacific Mutual letterhead; that proposal indicated that he would place life insurance with Pacific Mutual and health insurance with Union Fidelity. While Union Fidelity and Pacific Mutual are separate and distinct companies and have no affiliation, Ruffin, when asked by Mrs. Poindexter, indicated that Union Fidelity was a subsidiary of Pacific Mutual.
Employees who opted to participate in the insurance plan paid their premiums by way of payroll deduction. Periodically, Mrs. Poindexter collected the money deducted from these employees' paychecks and wrote one check each month to cover the insurance premiums. These checks were sent to, or were picked up by, Ruffin, who prepared the billing each month on a Pacific Mutual letterhead. Within a few months of the effective date of the insurance policies, they were cancelled for nonpayment of premiums. Neither the City nor its employees were made aware that the policies had lapsed, because, unknown to the City, Mr. Ruffin, with the help of Pacific Mutual's Birmingham manager, Patrick Lupia, had had all correspondance between the insurers and the City employees funnelled through Lupia's Birmingham Pacific Mutual office. In effect, the employees had been paying Ruffin, but their payments had not been forwarded to the insurers.
During this time, in January 1982, Cleopatra Haslip, a participating member of the health insurance plan, entered a hospital. After incurring $2,500 in hospital bills and additional medical bills, she learned that her insurance had been cancelled. The hospital demanded $600 before it would agree to discharge her, and her doctor eventually turned her case over to a collection agency. In time, a deficiency judgment was rendered against Mrs. Haslip, and, as a result, her credit was adversely affected.
Mrs. Haslip and other members of the insurance plan sued Pacific Mutual and Lemmie Ruffin. The case was submitted to the jury on the plaintiffs' claim of fraud; on August 7, 1987, the jury rendered a verdict in favor of each of the plaintiffs in the following amounts: Cleopatra Haslip $1,040,000; Cynthia Craig$12,400; Alma Calhoun$15,290; Eddie Hargrove$10,288.
Pacific Mutual timely filed motions for a new trial, or alternatively, a judgment notwithstanding the verdict. The motions were denied by the trial court. Pacific Mutual appeals from the judgment based on the verdict; Lemmie Ruffin has not appealed.
Pacific Mutual raises eleven issues on appeal. To facilitate our discussion, we address in the first section several interrelated issues raised by Pacific Mutual.

I.
The first issue that Pacific Mutual presents is whether the trial court erred in charging the jury. Pacific Mutual suggests three ways in which it says the jury charge was flawed: that the trial court charged the jury on an incorrect standard for awarding punitive damages for fraud; that the trial court improperly charged the jury on the standard for awarding damages for mental distress for fraud; and that the trial court erred in refusing to give Pacific Mutual's requested charge regarding justifiable reliance. We address each of these alleged errors in turn.
*540 In charging the jury, the trial judge indicated that the jury could impose liability for fraud if it determined that defendant Ruffin knew that his representations to the plaintiffs were false or should have known that his representations were false:
"[The Court:] The defendant must have known at the time he made the representation that that fact was not true or he should have known that it was not true.
". . . .
"That is the Defendant represents a certain fact to be true, when in fact that fact is untrue. The Defendant making that representation knows it is untrue when he makes the representation or he should have known it was untrue." (Emphasis added.)
The latter phrase, "should have known it was untrue," Pacific Mutual contends, suggests negligence, which constitutes only "legal fraud": a misrepresentation made innocently or by mistake, for which punitive damages are not recoverable. Code 1975, § 6-5-101. Continental Volkswagen, Inc. v. Soutullo, 54 Ala.App. 410, 309 So.2d 119 (1975). In contrast, a cause of action for deceit or willful fraud, for which punitive damages are recoverable, requires proof that the defendant knew his representation was untrue at the time he made that representation or that he made the representation with reckless disregard for the truth. Code 1975, § 6-5-103. Because punitive damages are not recoverable for "legal fraud," Pacific Mutual argues that the failure of the trial court to distinguish in its jury charge between willful fraud and legal fraud impermissibly allowed the jury to impose punitive damages for mere legal fraud. We disagree.
In his written opinion, the trial judge conceded that he had erred in charging the jury on the issue of fraud by not distinguishing between misrepresentation and fraud. Moreover, the trial court admitted that the phrase "should have known" had crept into the charges inadvertently. Nevertheless, we can not say that under the facts of this case the misphrased jury instruction substantially harmed the defendant.
The evidence submitted at trial indicated that Lemmie Ruffin forged signatures on applications in order to obtain a minimum number of applicants to meet Union Fidelity's membership requirements for establishing a group insurance plan; that the plan was cancelled within a few months of its inception for nonpayment of premiums, even though participants in the plan had made their premium payments to Lemmie Ruffin; that Lemmie Ruffin continued to accept premium payments after notice of cancellation of the insurance plan had been received by his office; that premium payments collected by Lemmie Ruffin were deposited into his own account; and that Ruffin deposited funds refunded to participants by Union Fidelity into his wife's personal savings account. Given these facts, it is impossible for this Court to entertain the suggestion that the jury could have been confused or that it could have concluded that Ruffin's representations were made either innocently or mistakenly. We, therefore, affirm the trial court's conclusion that if, in the context of these facts, the charge was erroneous, then the erroneous charge can only be characterized as harmless error. As the trial judge stated in his opinion:
"Although the `should have known' language should not have been included, it is unlikely that this misleading language materially confused the jury. Taken together with the evidence, it is the opinion of this court that the misphrased jury instruction was not of sufficient scale to substantially harm the defendant. [Citations omitted.]
". . . .
"... [Given these facts,] [t]he conclusion is inescapable that the fraud was intentional, gross, oppressive and malicious."
Next, Pacific Mutual argues that the trial court erred in charging the jury on awarding damages for mental distress for fraud. Again, damages for mental distress may not be awarded unless the fraud was willful. Holcombe v. Whitaker, 294 Ala. 430, 318 So.2d 289 (1975). As we have previously stated, when one considers the *541 evidence presented at trial, he can reach but one reasonable conclusion: if fraud existed in this case, that fraud must have been willful. Thus, we will not reverse the judgment based upon the trial court's failure to distinguish willful from nonwillful fraud.
The third alleged error in the instructions to the jury was the judge's refusal to give a charge regarding justifiable reliance. After careful scrutiny of the record, and in particular the trial judge's charge to the jury, we find no basis upon which we may reverse the judgment in this case because of the judge's refusal of this charge.

II.
The next issue Pacific Mutual presents is whether the trial court erred in failing to grant its motions for directed verdict and judgment notwithstanding the verdict. Pacific Mutual argues that these motions were due to be granted because, it says, 1) Ruffin was not acting within the scope of his agency with Pacific Mutual in placing or maintaining health insurance on the City employees, 2) Ruffin's acts are not imputable to Pacific Mutual, and 3) the evidence presented at trial failed to prove the elements of an action for misrepresentation on the part of Pacific Mutual. We disagree with all three of Pacific Mutual's arguments.
Because the trial court accurately addresses the state of the law regarding the doctrine of respondeat superior in Alabama, we quote at length from the trial judge's opinion:
"The Supreme Court of Alabama has repeatedly stated that a corporation is liable for the torts of its employees, both agent and servant, based upon the principle of respondeat superior, not the doctrine of agency. `The factual question to be determined is whether the act complained of was done either by agent or servant while acting within the course and scope of his employment; the corporation or principal may be liable in tort for the acts of its servants or agents done within the scope of employment, real or apparent, even though it did not authorize or ratify such acts or even expressly forbade them.' Autry [Autrey] v. Blue Cross & Blue Shield of Alabama, 481 So.2d 345, 347-48 (Ala. 1985), National States Ins. Co. v. Jones, 393 So.2d 1361, 1367 (Ala.1980) (quoting from Old Southern Life Ins. Co. v. McConnell, 52 Ala.App. 589, 296 So.2d 183, 186 (1974)). The courts have further held the principal liable for his agent's fraud committed within the actual or apparent scope of his employment, even where the fraud was committed strictly for the agent's own benefit and to the principal's detriment. Henderson v. Croom, 403 F.Supp. 668 (1975)....
"As the above cases illustrate, the bulk of Alabama's law holds that a principal may be held liable in respondeat superior for the fraud of its agents. The issue as to whether Ruffin was an agent for Pacific Mutual was properly given to the jury to decide, as was the abandonment-of-agency issue."
Pacific Mutual primarily based its defense of this case on an "abandonment of agency" theory. The defense argued that Ruffin was acting on behalf of other principals at the time he committed fraud, thereby abandoning his agency relationship with Pacific Mutual.
As the trial court pointed out above, whether one is an agent of another is generally a question to be decided by the jury. Brown v. Commercial Dispatch Pub. Co., 504 So.2d 245, 246 (Ala.1987). Accord, American Pioneer Life Ins. Co. v. Sandlin, 470 So.2d 657 (Ala.1985). In American Pioneer, the agent, McWhorter, was not a registered agent for American Pioneer when he sold an annuity to the plaintiff, although he became one several months later. Because the evidence pertaining to McWhorter's status as an agent of American Pioneer was conflicting, this Court deemed it a proper question for the jury.
In this case there is no question that sufficient evidence existed to support the jury's determination that Lemmie Ruffin and his agency manager, Patrick Lupia, were acting within the line and scope of *542 their employment with Pacific Mutual when Ruffin made the representations to the plaintiffs that became the subject of this suit: Ruffin was a Pacific Mutual agent and an employee of the company; Lupia was the agency manager; Ruffin's licensing was maintained by the Pacific Mutual office; Ruffin was furnished training and sales material by Pacific Mutual; Ruffin always introduced himself as "Lemmie Ruffin with Pacific Mutual"; Ruffin's reply card was mailed from, and was returned to, the Pacific Mutual office; Ruffin presented City employees with his Pacific Mutual business card; Ruffin never told anyone that the health insurance would be placed with a company other than Pacific Mutual; Ruffin's proposal was typed at Pacific Mutual's office on Pacific Mutual stationery; the monthly billing statements for premiums were prepared at, and mailed from, Pacific Mutual office on Pacific Mutual stationery; Lupia handled all the finances and "the books" for the Pacific Mutual office; all of Lupia's business and all of Ruffin's business was carried on at Pacific Mutual offices; Lupia had received complaints from policyholders alleging that Ruffin was engaging in fraudulent activities but he had done nothing about those complaints; Pacific Mutual's home office had received complaints regarding Ruffin's fraudulent activities but had done nothing about them.
This evidence was properly submitted to the jury, which found that Lemmie Ruffin had not abandoned his agency relationship with Pacific Mutual, and that he had not acted alone. The jury rendered a verdict based upon sufficient evidence. For the foregoing reasons, we can not find that Ruffin was acting outside the scope of his agency or that his acts were not imputable to Pacific Mutual.
Moreover, we can not say, given the evidence submitted to the jury, that the plaintiffs failed to prove the elements of an action for misrepresentation. Pacific Mutual claims that the plaintiffs failed to adduce evidence supporting a claim for fraud because, it says, there was no misrepresentation of a material existing fact, no justifiable reliance upon any misrepresentaions, and no actual damage to the plaintiffs. This statement simply ignores the evidence presented at trial. When Lemmie Ruffin accepted the premium payments from his clients, the plaintiffs, he was in essence telling those clients that there was an existing policy in effect. Thus, Ruffin was misrepresenting an existing fact. Courts have held that "payment of a premium is necessary as a condition precedent to an enforceable contract of insurance." Johnson v. Dairyland Ins. Co., 398 So.2d 317 (Ala.Civ. App.1981), Queen Ins. Co. of America v. Bethel Chapel, 27 Ala.App. 443, 174 So. 638, cert. denied, 234 Ala. 184, 174 So. 640 (1937). The premiums in this case were in fact paid out of the employees' paychecks and were not merely promises to pay. By accepting these premiums, Ruffin represented to the parties that their policies were both existing and current. The evidence presented proves that Ruffin had no intention of fulfilling his promises and that he intended his deception. By accepting premiums on a policy which, unknown to the plaintiffs, had been cancelled, Ruffin exhibited his intentions not to perform his promises. We therefore reject Pacific Mutual's claim that the evidence did not prove the elements of an action for fraud.

III.
Pacific Mutual next argues that the trial was tainted by the admission of illegal evidence. At trial, the testimony of a number of witnesses was admitted despite the objections of Pacific Mutual. First, the testimony of Debra Ault, a former secretary, regarding telephone calls from unnamed persons complaining about Ruffin, was admitted over objection that the proper foundation had not been laid for the testimony. Pacific Mutual argues that this evidence was prejudicial, because it was offered as evidence of other frauds perpetrated by Lemmie Ruffin. Moreover, Ault's testimony, Pacific Mutual claims, was improper because, although the rule had been invoked, Ault was allowed to remain in the courtroom during other witnesses' testimony.
*543 C. Gamble, McElroy's Alabama Evidence § 273.02 (3d ed.1977) states:
"If it is material to prove that a person at a specified time had been put on notice about a matter ... proof that a statement was made to him prior to the time in question ... and which is offered for the purpose of showing ... notice, ... is not violative of the Hearsay Rule."
Pacific Mutual employed Ault as a secretary. Her duties consisted of, among other things, answering the telephone. The trial court admitted evidence of her conversations with Ruffin's clients, not to prove the truthfulness of the matter asserted, but rather to prove Pacific Mutual's notice of the fraud. Lupia denied any such complaints. Ault's testimony showed that Pacific Mutual had received notice of customer complaints concerning Ruffin; therefore, the trial court's admission of Ault's testimony did not improperly prejudice the trial.
Pacific Mutual also complains of the trial court's admission of the testimony of Cleopatra Haslip, one of the plaintiffs; that of Ralph Passman, an insurance broker who handled the Union Fidelity insurance plan and who maintained records concerning the cancellation of that policy; and that of Ron Gaiser, an expert witness for the plaintiffs. After a careful review of the trial court's rulings in regard to each, we can not say that Pacific Mutual was materially prejudiced by the admission of this evidence.

IV.
Finally, Pacific Mutual argues that the punitive damages award in this case violates its rights embodied in the first, fourth, fifth, sixth, eighth, and fourteenth amendments to the United States Constitution.
Initially we point out that the United States Supreme Court has recently ruled in the case of Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc., ___ U.S. ___, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989), that the excessive fines clause of the eighth amendment does not apply to punitive damages awards in cases between private parties. Moreover, in a series of recent cases, this Court has rejected the remaining constitutional arguments submitted by Pacific Mutual. See, Industrial Chemical & Fiberglass Corp. v. Chandler, [after remand, January 16, 1989] 547 So.2d 812 (Ala.1988); United American Ins. Co. v. Brumley, 542 So.2d 1231 (Ala.1989); HealthAmerica v. Menton, 551 So.2d 235 (Ala.1989); Olympia Spa v. Johnson, 547 So.2d 80 (Ala.1989).
We also note that, in an abundance of concern for the preservation and protection of a defendant's constitutional right to due process of law, this Court has adopted guidelines to be used by the trial court in reviewing judgments. These guidelines are found in Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986); Harmon v. Motors Insurance Corp., 493 So.2d 1370 (Ala.1986); Alabama Farm Bureau Mutual Cas. Ins. Co. v. Griffin, 493 So.2d 1379 (Ala.1986). They require the trial judge to reflect on the record his or her reasons for either interfering or not interfering with a jury's verdict.
In reviewing the punitive damages award in this case, the trial judge applied the principles of law adopted in these cases, held a hearing, and set out on the record the reasons why he felt the law did not authorize him to order a remittitur. The facts in the record support the trial court's findings. Further, jury verdicts are presumed correct, and that presumption is strengthened when the presiding judge refuses to grant a new trial. Super Valu Stores, Inc. v. Peterson, 506 So.2d 317 (Ala.1987). In view of the record, we conclude that the judgment of the trial court, including the damages award, which the trial court reviewed on motion for new trial, is due to be, and it hereby is, affirmed.
AFFIRMED.
JONES, ALMON, ADAMS and KENNEDY, JJ., concur.
HOUSTON, J., concurs in the result.
MADDOX and STEAGALL, JJ., concur in part and dissent in part.
*544 MADDOX, Justice (concurring, in part; dissenting, in part).
I concur in the majority opinion in all respects except as to that aspect of the opinion that holds that the punitive damages award in this case does not violate the due process clause of the Fourteenth Amendment to the United States Constitution.
While I personally agree with Justice O'Connor that the "excessive fines clause" of the Eighth Amendment should be applicable in civil cases,[1] I recognize that the Supreme Court of the United States, in Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc., ___ U.S. ___, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989), has held otherwise. I think that the United States Supreme Court, in Kelco, while holding that the excessive fines clause of the Eighth Amendment is inapplicable to a punitive damages award in a civil case,[2] nevertheless left the door open for a challenge under the federal constitution's due process clause. In fact, in Kelco, all nine Justices expressed some concern with unrestrained punitive damages awards, and as I read Kelco, the Court may consider a challenge to an award that is properly presented and argued under the due process clause of the Fourteenth Amendment.[3]
During the last few years, individual Justices of the Supreme Court of the United States have expressed concern about "windfall recoveries which may be both unpredictable and, at times, substantial";[4] "juries [that] assess punitive damages in wholly unpredictable amounts bearing no necessary relation to the actual harm caused";[5] and awards based upon a jury's "wholly standardless discretion to determine the severity of punishment."[6]
In Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986), a case which was appealed from this Court, the Court noted that the argument "that the lack of sufficient standards governing punitive damages awards in Alabama violates the Due Process Clause of the Fourteenth Amendment" raised important issues that "in an appropriate setting, must be resolved." 475 U.S. at 828-29, 106 S.Ct. at 1589.
While the view I expressed in my dissent in Industrial Chemical & Fiberglass Corp. was not sustained in Kelco, I take heart that ultimately, when the due process issue is properly presented to the United States Supreme Court, that Court will hold that giving a jury a "standardless discretion" to award punitive damages in a civil case violates the due process clause of the Fourteenth Amendment.
*545 While I applaud the procedure this Court has adopted to review and revise the jury's decision based on its "standardless discretion,"[7] I cannot believe that procedure is sufficient to accord to litigants all the due process protection the Constitution envisions.[8]
Because I believe that the award of punitive damages in this case violates the defendant's due process rights under the Fourteenth Amendment, I must respectfully dissent as to that portion of the majority's opinion.
STEAGALL, J., concurs.
NOTES
[1] See my dissenting opinion in Industrial Chemical & Fiberglass Corp. v. Chandler, [Ms. 86-381 & 86-385, September 30, 1988, after remand, January 16, 1989] 547 So.2d 812 (Ala.1988).
[2] The Court's majority opinion, written by Justice Blackmun, said that the Eighth Amendment's excessive fines clause did not apply to punitive damages awards in civil suits between private parties, because "the primary focus of the Eighth Amendment was the potential for governmental abuse of its `prosecutorial' power, not concern with the extent or purposes of civil damages." ___ U.S. at ___, 109 S.Ct. at 2915.
[3] In Kelco, the Court found that the due process issue had not been sufficiently raised for the Court to consider it, but the Court did note: "[W]e have never addressed the precise question presented here: whether due process acts as a check on undue jury discretion to award punitive damages in the absence of any express statutory limit.... That inquiry must await another day." ___ U.S. at ___, 109 S.Ct. at 2921. Justice Blackmun stated: "There is some authority in our opinions for the view that the Due Process Clause places outer limits on the size of a civil damages award." Id.

In Kelco, in a separate concurring opinion in which Justice Marshall joined, Justice Brennan suggested that the due process issue could be raised: "I join the Court's opinion on the understanding that it leaves the door open for a holding that the Due Process Clause constrains the imposition of punitive damages in civil cases brought by private parties." ___ U.S. at ___, 109 S.Ct. at 2923.
[4] City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 270-71, 101 S.Ct. 2748, 2761-62, 69 L.Ed.2d 616 (1981).
[5] Gertz v. Welch, 418 U.S. 323, 350, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789 (1974).
[6] Bankers Life & Cas. Co. v. Crenshaw, 486 U.S. 71, 89, 108 S.Ct. 1645, 1656, 100 L.Ed.2d 62 (1988) (O'Connor, J., concurring in part and concurring in the judgment).
[7] Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986); Harmon v. Motors Ins. Corp., 493 So.2d 1370 (Ala.1986); Alabama Farm Bureau Mut. Cas. Ins. Co. v. Griffin, 493 So.2d 1379 (Ala.1986).
[8] In various special concurrences and dissents, I have expressed the view that punitive damages awarded in wrongful death cases are in a different category from punitive damages awarded in other cases. See Alabama Power Co. v. Cantrell, 507 So.2d 1295, 1306 (Ala.1986), appeal dismissed, 486 U.S. 1028, 108 S.Ct. 2008, 100 L.Ed.2d 596 (1988); Industrial Chemical, supra.

The Legislature, in placing a "cap" on the award of punitive damages in all cases other than wrongful death cases (except, of course, the $1,000,000 cap in the Medical Liability Act) has essentially recognized the distinction that I have made and do make.