The plaintiff, Madie Buce Newman, appeals from a judgment entered in favor of the defendants, Bankers Fidelity Life Insurance Company ("Bankers") and Glenn M. Hudson, after a jury returned a verdict. We affirm.
The record reveals the following. Ralph Newman and his wife Madie Newman bought a house in Lee County in 1964. They financed their purchase through a 35-year FHA mortgage. They then spoke with C.G. Littleton, the local agent for Bankers, about obtaining insurance on Mr. Newman's life in order to pay the balance on the mortgage should Mr. Newman predecease his wife. Littleton asked Glenn Hudson, Bankers' supervising agent in Montgomery, "to discuss some way for him [Mr. Newman] to cover a mortgage." R.T. 1097. Hudson met with Mr. Newman and took his application for insurance. Mrs. Newman was not present at this meeting. The application was for a "25 yr. Income Rep. Policy $60.00 monthly," with the amount of insurance set at $13,446.00. The application made a special request for "Lump Sum Settlement of Commuted Value Requested (Date Policy Nov. 7, 64)." Along with Newman's application, Hudson sent a note to Bankers indicating that the insurance was meant to cover the mortgage balance on his 35-year loan.
Bankers issued a "family income replacement" insurance policy on Ralph Newman's life, with Madie Newman as beneficiary. *Page 441 
The face of the policy, on its first page, indicated it would provide monthly income of $60 to the beneficiary; that the "commuted amount" of the policy was $13,446 on date of issue and would decrease according to a table listed on the face of the policy; that the date of issue was November 7, 1964; that the expiration date was November 7, 1989; and that the term period was "25 FULL POLICY YEARS." The bottom of the first page of the policy contained the following language:
"FAMILY INCOME REPLACEMENT PROGRAM
 "Convertible Decreasing Term Insurance For 25 Years
"Premiums Payable for 25 Years or Until Prior Death
 "Monthly Income Payable at Death of Insured During Term Period. Non-Participating"
Hudson delivered the policy to Madie Newman at her home on January 4, 1965, and collected one month's premium from her. Mrs. Newman testified that Hudson told her "that Mr. Newman had taken out a life insurance policy on himself to take care of the mortgage on the house," and that the insurance would last 25 years. R.T. 835-36. She also testified that Hudson told her she would receive $13,446 if her husband died and the policy was paid up, and that he unfolded the policy and showed her the amount of $13,446 and the $60 per month figure, but did not show her anything else. Mrs. Newman did not read the policy until July 1990, after her husband had been hospitalized.
In February 1989, Alice Priest, a Bankers employee, noted on Mr. Newman's policy master record, which was maintained in Mr. Newman's policy file at Bankers, that the policy was due to be terminated in November 1989. Apparently because of a series of clerical errors, the policy remained on active status after its termination date of November 7, 1989. Between November 1989 and February 1990, Mrs. Newman received monthly billing statements from Bankers and continued to pay monthly premiums on her husband's policy. She received from Bankers an authorization form to allow Bankers to automatically withdraw the monthly premium from her checking account; she completed the form and returned it in February 1990. Bankers received automatic monthly premium payments from the Newmans between February 1990 and July 1990.
Mr. Newman was hospitalized on July 3, 1990. Mrs. Newman telephoned Bankers on July 9, 1990, to find out how to file a claim on her husband's policy if he were to die. She testified that someone at Bankers told her how to file a claim, and that she was told she would receive $60 a month and $13,446. Mr. Newman died on July 15, 1990, and Mrs. Newman thereafter filed a claim with Bankers on his life insurance policy.[1] Bankers sent Mrs. Newman a check for $137.79 and a summary-of-benefits notice dated August 23, 1990, indicating that the check was for the return of unearned premiums. The notice contained the following remarks:
 "This policyhhas [sic] a term period of 25 years, on November 7, 1989 it expired with no benefits, although you continued to pay premiums we are refunding those premiums paid from the date of expiration to August 1990. I am sorry our answer could not have been more favorable, a copy of the front fpage [sic] of the policy is enclosed for your information."
Mrs. Newman testified that the first time she learned she was not going to receive any insurance payment for her husband's death was when she received this notice. T.R. 852. She later testified that when she looked at the front page of the policy in July after her husband got sick, but before his death, she knew that the policy had expired. She also testified that she telephoned Bankers, told someone that she had overpaid on the policy for nine months between November 1989 and July 1990 and that the policy had expired, and asked Bankers to send the money back to her. T.R. 875-76.
Mrs. Newman sued Bankers, asserting claims based on fraud, deceit, bad faith, and *Page 442 
wantonness, arising out of its actions concerning the life insurance policy issued by Bankers on the life of her husband. In the same action, Mrs. Newman sued Bankers' agent, Glenn M. Hudson, asserting claims based on fraud and deceit arising out of representations he made to the Newmans concerning Mr. Newman's life insurance policy. She sought compensatory and punitive damages against both defendants.
The trial court directed a verdict in favor of Bankers on the wantonness claim, after the close of Mrs. Newman's case. The jury returned a general verdict in favor of the defendants on the remaining claims. The trial court denied Mrs. Newman's motion for a new trial. Mrs. Newman appeals.
Mrs. Newman raises six broad issues on appeal. 1) Did the trial court err in not allowing evidence of similar acts by Bankers? 2) Did the trial court err in its rulings on objections to questions asked of Bankers' president, Eugene Choate, during direct and cross-examination? 3) Did the trial court err in directing a verdict against Mrs. Newman's wantonness claim? 4) Did the trial court err in refusing to give certain jury charges requested by Mrs. Newman? 5) Was the jury verdict contrary to the law? 6) Did the trial court err in denying Mrs. Newman's motion for a new trial?
Did the trial court err in not allowing evidence of similar acts by Bankers? Mrs. Newman contends that the actions of Bankers regarding a life insurance policy it had issued to Robert Neal Conkle were sufficiently similar to its actions regarding Ralph Newman's policy that evidence of Bankers' treatment regarding Mr. Conkle's policy should have been admitted to show a fraudulent intent, plan, or scheme by Bankers, or to indicate a pattern or practice of intentional wrongful conduct. See § 6-11-21(1), Ala. Code 1975. The trial judge held an evidentiary hearing on the issue before trial; it excluded the evidence after determining that the facts surrounding the Conkle policy did not represent a "sufficiently pertinent set of circumstances" to allow its use as pattern or practice evidence.
Evidentiary matters are within the sound discretion of the trial judge. The commission of similar wrongs by a party to a civil action may be admissible to show a fraudulent intent, plan, or scheme. C. Gamble, McElroy's Alabama Evidence § 70.03(1) (4th ed. 1991); Kabel v. Brady, 519 So.2d 912, 918
(Ala. 1987). "Questions of materiality, relevancy, and remoteness of evidence are matters resting within the discretion of the trial court, whose exercise of that discretion will not be reversed unless it has been grossly abused." HealthAmerica v. Menton, 551 So.2d 235, 245 (Ala. 1989) cert. denied 493 U.S. 1093, 110 S.Ct. 1166,107 L.Ed.2d 1069 (1990), citing Dorcal, Inc. v. Xerox Corp.,398 So.2d 665, 670-71 (Ala. 1981). However, "[i]n order to admit other false representations in a fraud case, the other representations must be similar in nature to those alleged in the complaint, and the transaction must be of substantially the same character." Massachusetts Mut. Life Ins. Co. v. Collins,575 So.2d 1005 (Ala. 1990), cert. denied, 499 U.S. 918,111 S.Ct. 1306, 113 L.Ed.2d 240 (1991) (citations omitted). Although the plaintiff in a fraud case has wide latitude as to what proof she may submit into evidence, the admissibility of such evidence rests largely within the discretion of the trial court, and its ruling will not be disturbed on appeal unless it has abused that discretion. Allstate Ins. Co. v. Hilley,595 So.2d 873, 877 (Ala. 1992). After carefully reviewing the record, we find no evidence that the trial court abused its discretion in excluding testimony and other evidence concerning the Conkle policy, and therefore we will not disturb this ruling on appeal.
Did the trial court err in its rulings on objections to questions asked of Eugene Choate during direct and cross-examination? Mrs. Newman called Eugene Choate, the president of Bankers and its representative at the defendants' table during trial, as an adverse witness on direct examination.
Mrs. Newman contends that the trial court erred in sustaining the defendants' objections to her examination of Mr. Choate. Mrs. Newman was properly allowed to interrogate Mr. Choate, as an officer of an adverse party, by use of leading questions on direct examination. Ala.R.Civ.P. 43(b). The defendants did not object to Mrs. Newman's use of *Page 443 
leading questions. A careful review of the record indicates that the trial court did not abuse its discretion in sustaining the defendants' objections to Mrs. Newman's questioning of Mr. Choate.
Mrs. Newman further contends that the trial court erred in allowing the defendants' counsel to cross-examine Mr. Choate by use of leading questions. "Leading questions are generally allowed on cross-examination." Ala.R.Civ.P. 43(b). We find no error by the trial court in allowing the defendants to use leading questions on cross-examination of Mr. Choate.
Did the trial court err in directing a verdict against Mrs. Newman's wantonness claim? "[A] directed verdict is proper when the claimant has failed to present substantial evidence as to one or more elements of [her] cause of action."Danford v. Arnold, 582 So.2d 545, 546 (Ala. 1991). "In considering the question of the sufficiency of the evidence of wantonness to be submitted to the jury, this court must accept the adduced evidence most favorable to the plaintiff as true, and indulge such reasonable inferences as the jury was free to draw from the evidence." Bishop v. Poore, 475 So.2d 486, 487
(Ala. 1985).
"What constitutes wanton misconduct depends on the facts presented in each particular case." South Cent. Bell Tel. Co.v. Branum, 568 So.2d 795, 797 (Ala. 1990). Wantonness, which involves a conscious or intentional act, should not be confused with negligence, which involves inadvertence. As we said inLynn Strickland Sales Service, Inc. v. Aero-Lane Fabricators,Inc., 510 So.2d 142 (Ala. 1987):
 "Implicit in wanton, wilful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury. . . .
 "Negligence is usually characterized as an inattention, thoughtlessness, or heedlessness, a lack of due care; whereas wantonness is characterized as an act which cannot exist without a purpose or design, a conscious or intentional act. . . .
". . . .
 ". . . Again, the distinction is discussed in Spieser, Krause, and Gans, 3 The American Law of Torts § 10.01 (1986) at 358:
 " '. . . Willfulness or wantonness imports premeditation, or knowledge and consciousness that the injury is likely to result from the act done or from the omission to act, and strictly speaking, is not within the meaning of the term "negligence," which conveys the idea of inadvertence, as distinguished from premeditation or formed intention.' "
510 So.2d at 145-46.
Mrs. Newman argues that Bankers acted wantonly in failing to update its policy master record to show that Ralph Newman's policy had expired, even though Bankers' computer system and its file on Newman contained information showing when the policy expired and even though Bankers had a "no match" computer program that would have identified the policy as expired had the program been run between November 7, 1989, and July 15, 1990. Mrs. Newman also argues that Bankers acted wantonly in failing to notify the Newmans that the policy had expired, in accepting premium payments on the policy after its expiration, and in inducing the Newmans to make automatic bank draft payments after the policy had expired.
Based on the evidence in the record, and accepting the evidence most favorable to Mrs. Newman as true, and indulging such reasonable inferences as the jury was free to draw therefrom, we conclude that Mrs. Newman failed to present substantial evidence on an essential element of her wantonness claim, e.g., that Bankers acted or failed to act with knowledge that injury to Mrs. Newman was likely to result. Therefore, we hold that the trial court did not err in directing the verdict against her wantonness claim.
Did the trial court err in refusing to give certain jury charges requested by Mrs. Newman? Mrs. Newman contends that the court erred in refusing her proposed jury charges 1 through 15, which were based on language found in our recent opinion in Intercontinental Life Ins. Co. v. Lindblom,598 So.2d 886, 888 (Ala.), cert. denied, ___ U.S. ___,113 S.Ct. 200, 121 L.Ed.2d 142 (1992). *Page 444 
It is reversible error to give an incorrect or misleading instruction to the jury as to the theory of a case, and a new trial is required if the record reveals that the jury was given such an erroneous charge. American Cast Iron Pipe Co. v.Williams, 591 So.2d 854, 856 (Ala. 1991) (citations omitted).
Rule 51, Ala.R.Civ.P., as it concerns appeals regarding refused jury charges, states:
 "The refusal of a requested, written instruction, although a correct statement of the law, shall not be cause for reversal on appeal if it appears that the same rule of law was substantially and fairly given to the jury in the court's oral charge or in charges given at the request of the parties."
The trial court did not err in refusing Mrs. Newman's proposed charges, because the rule of law set forth in the requested charges was given to the jury when the court read the following charge to the jury:
 "The act of accepting premiums may constitute a representation by the insurer that the policy is in full force and effect. If you are reasonably satisfied from the evidence in this case that such a representation when made was made without the corresponding intent to pay the proceeds in the event of a claim, and was coupled with reliance by the insured, then you may find that said conduct constituted willful fraud."
R.T. 1283-84. Mrs. Newman argues that this is an incorrect statement of the law, citing Lindblom, which states:
 "In the insurance context, the act of accepting premiums constitutes a representation by the insurer that the policy is in full force and effect. Such a representation, when made without the corresponding intent to pay the proceeds in the event of a claim and coupled with reliance by the insured, constitutes willful fraud."
598 So.2d at 888. Mrs. Newman, in her reply brief, incorrectly interprets Lindblom as holding that, as a matter of law, the insurer's acceptance of premiums on an expired policy constitutes willful fraud. In Lindblom, the jury found that the acceptance of overdue premium payments "after the expiration of the grace and courtesy periods constituted a willful misrepresentation that the policy remained in force." Id. at 889. This finding was supported by the record. Id. However, it was not the mere acceptance of payments that constituted willful fraud. Lindblom relied on Pacific Mut. Life Ins. Co. v.Haslip, 553 So.2d 537 (Ala. 1989), affirmed, 499 U.S. 1,111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), in establishing the elements of willful fraud. Both these cases stand for the proposition that the acceptance of insurance premiums on an expired, overdue, or nonexistent policy is a representation by the insurer to the insured that the policy is in full force and effect. Haslip, 553 So.2d at 542; Lindblom, 598 So.2d at 888. However, to prove willful fraud, the plaintiff must also present evidence that the insurer (or its agent) had no intention of fulfilling its promises on the policy and that the insurer intended to deceive its insured. 553 So.2d at 542. Because this rule of law was substantially and fairly given to the jury in the court's oral charge, we hold that the trial court did not err in refusing Mrs. Newman's requested jury charges.
Was the jury verdict contrary to the law? Mrs. Newman argues that the verdict is contrary to existing law, is contrary to the evidence adduced with regard to her claims for compensatory and punitive damages, and is manifestly unjust.
"A jury verdict is presumed to be correct, and this presumption is strengthened by the trial court's denial of a motion for a new trial. A judgment based on a jury verdict will not be reversed unless it is plainly and palpably wrong." Whisenant v. Nationwide Mut. Fire Ins. Co.,577 So.2d 909, 911 (Ala. 1991) (citations omitted).
 "Upon review of a jury verdict, we presume that the verdict was correct; we review the tendencies of the evidence most favorably to the prevailing party; and we indulge such reasonable inferences as the jury was free to draw from the evidence. We will not overturn a jury verdict unless the evidence against the verdict is so much more credible and convincing to the mind than the evidence supporting the verdict that it clearly indicates that the jury's *Page 445 
verdict was wrong and unjust. [Citation omitted]."
Campbell v. Burns, 512 So.2d 1341, 1343 (Ala. 1987).
There was sufficient evidence to support the jury's verdict. Mrs. Newman testified that Mr. Hudson told her when he delivered the policy that the insurance would last 25 years. Mr. Choate, Bankers' president, testified that there was no 35-year decreasing term policy on the market when Ralph Newman bought the policy in 1964. R.T. 593, 659. Mrs. Newman testified that she knew the policy had expired when she telephoned Bankers about a refund on the extra nine premiums before her husband died. Although there was conflicting evidence on these and other issues at trial, we cannot say that the other evidence was so much more credible and convincing as to indicate that the jury verdict was unjust or plainly and palpably wrong. Campbell v. Burns, 512 So.2d at 1343. "This Court has 'neither the right nor the inclination to say whether we would have decided the case differently. The facts are to be determined by the jury and not by us. . . ." City of Birmingham v. Hale, 574 So.2d 784, 786
(Ala. 1991), citing Campbell, supra, at 1344. After carefully reviewing the law, we cannot agree that the verdict was contrary to existing law. Furthermore, after carefully reviewing the record, we cannot say that the verdict is manifestly unjust.
Did the trial court err in denying Mrs. Newman's motion for a new trial? Mrs. Newman contends that a new trial is appropriate because, she says, the jury verdict was against the great weight and preponderance of the evidence. "[A] motion for new trial on the ground that the verdict is against the great weight and preponderance of the evidence is examined for a determination of whether the verdict is palpably wrong or manifestly unjust." Ex parte Oliver,532 So.2d 627, 628 (Ala. 1988). We have already determined that there is nothing to clearly indicate that the verdict here is wrong or unjust. Therefore, the trial court did not err in denying Mrs. Newman's motion for a new trial. City ofBirmingham v. Hale, 574 So.2d at 786; Campbell v. Burns, 512 So.2d at 1343.
The judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, HOUSTON and KENNEDY, JJ., concur.
[1] Mrs. Newman sent Bankers a claimant's statement, a certified copy of Mr. Newman's death certificate, and the original insurance policy.