581 So.2d 414 (1991)
Roger L. ARMSTRONG
v.
ROGER'S OUTDOOR SPORTS, INC.
88-1190.
Supreme Court of Alabama.
March 8, 1991.
Rehearing Denied May 10, 1991.
*415 Zack Higgs, Huntsville, for appellant.
Wesley G. Smith and Danny D. Henderson, Huntsville, for appellee.
PER CURIAM.
Roger L. Armstrong purchased a boat, an engine for that boat, and a boat trailer from Roger's Outdoor Sports, Inc. ("Roger's Outdoor"). According to Armstrong, Roger's Outdoor represented to him before he bought the boat that the boat was "new" and that it had had "no prior owners"; later, Armstrong learned that the boat had had a prior owner. Armstrong filed an action against Roger's Outdoor, alleging fraud and misrepresentation in the sale of the boat. The jury returned a verdict for Armstrong, awarding him $3,625 in compensatory damages and $15,000 in punitive damages, and the trial court entered judgment on the verdict. Roger's Outdoor filed a motion for a judgment notwithstanding the verdict or, alternatively, for a new trial and requested that the trial court reduce the award pursuant to Ala.Code 1975, § 6-11-23. Section 6-11-23 sets forth a procedure whereby a party, after a trial, is entitled to a hearing for post-verdict review of a punitive damages award and that section dispenses with any presumption of correctness in favor of such an award by the trier of fact.
Armstrong filed a motion requesting that the trial court declare § 6-11-23 unconstitutional. After considering this motion and holding a hearing pursuant to § 6-11-23, the trial court upheld the jury's verdict as to compensatory damages but eliminated the punitive damages award. Armstrong appeals, contending that §§ 6-11-23 and -24 violate article I, §§ 11 (right of trial by jury) and 13 (right through due process to remedy for injury) of the Alabama Constitution, as well as other Alabama and United States constitutional provisions.
In portions of §§ 6-11-23 and -24, the legislature has attempted to control some of the most inherently judicial functions exercised by the courts: a trial court's determination of how much deference to give to a jury verdict, the similar question of an appellate court's deference to a factfinder, and an appellate court's scope of review of a trial court's judgment. In previous instances of such legislative intrusion into the core of the judicial function, the courts have declared the attempt a violation of the constitutional mandate of separation of the powers of government. This, in our opinion, is the central question of this case.
The portions of § 6-11-23 to which we refer read as follows:
"(a) No presumption of correctness shall apply as to the amount of punitive damages awarded by the trier of the fact.
"(b).... After such post verdict hearing the trial court shall independently (without any presumption that the award of punitive damages is correct) reassess the nature, extent and economic impact of such an award of punitive damages, and reduce or increase the award if appropriate in light of all of the evidence."
Section 6-11-24 reads in its entirety:
"(a) On appeal, no presumption of correctness shall apply to the amount of punitive damages awarded.
"(b) The appellate court shall independently reassess the nature, extent and economic impact of such an award and *416 reduce or increase the award if appropriate in light of all of the evidence."
Section 42 of the Alabama Constitution of 1901 reads:
"The powers of the government of the State of Alabama shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: those which are legislative, to one; those which are executive, to another; and those which are judicial, to another."
Section 43 reads:
"In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, the legislative department shall never exercise the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men."
The appellant has not raised these sections of the Constitution as grounds for overturning the statutes. Normally, a court will not hold a statute unconstitutional except on a basis specifically argued by a party and necessarily presented in the case. If "no considerations of public policy or morals are involved[, a] party may ... waive a rule of law, or statute, or even a constitutional provision." Alabama Terminix Co. v. Howell, 276 Ala. 59, 62, 158 So.2d 915 (1963). This case presents a unique situation, however, because, if we were to reject the constitutional arguments raised by the appellant, we would presumably be required by the statutes to "independently" review the verdict and judgment with "no presumption of correctness" as to either the judgment of the trial court or the verdict of the jury, which in this case was "the trier of the fact." If the portions of these sections that we have quoted above violate the principle of separation of powers, that violation affirmatively intrudes into the judicial process even though §§ 42 and 43 of the Constitution have not been argued. Therefore, we must consider these questions of deference to the trier of fact and to the trial court.
In 1915, the legislature passed two acts with provisions strikingly similar to the ones at issue. Acts 1915, No. 656, p. 722, amended § 2846 of the Code of 1907.[1] After providing for the right to appeal from the grant or refusal of a motion for new trial and prescribing the procedure for such an appeal, the act concluded: "And no presumption in favor of the correctness of the judgment appealed from, shall be indulged by the appellate court." Similarly, Acts 1915, No. 722, p. 824, amended § 5359 of the Code of 1907. The act required a party to demand a jury trial in order to receive one, and then made the following provision:
"Either party to a cause tried by the court without the intervention of a jury, may present for review the finding of the court on the evidence, and the Supreme Court, or Court of Appeals shall review the same with no presumption in favor of the finding of the trial court on the evidence, and if there be error, shall render such judgment as the court below should have rendered, or reverse and remand the cause for further proceedings as the Supreme Court or the Court of Appeals may deem right."
The "no presumption of correctness" portion of these two statutes was soon held inoperative on the ground that, if given effect, the provisions would violate the principle of separation of powers. Regarding Act No. 722, the Court said that the provision denying any presumption of correctness "can only apply where the opportunities of this court to consider the evidence is the same as the trial court, that is, when the evidence was taken by deposition." Hackett v. Cash, 196 Ala. 403, 405, 72 So. 52, 53 (1916). The Court continued:
"The Legislature evidently intended, by this act of 1915, to provide for trials without a jury in all courts unless it was *417 demanded, and to do away with the necessity of excepting to the finding or conclusion upon the facts in order to review the same in the appellate court, but did not mean to override a long line of the decisions of this court as to what weight would or would not be accorded the conclusion of the trial court upon the facts. Moreover, if it was otherwise intended, it would be an invasion of the judiciary to require this court to disregard the finding of the trial court upon facts when said trial court had a better opportunity to pass upon and consider the evidence than the appellate court."

(Emphasis added.)
This construction of Act No. 722 was followed in Finney v. Studebaker Corp. of America, 196 Ala. 422, 72 So. 54 (1916). In Hatfield v. Riley, 199 Ala. 388, 74 So. 380 (1916), a similar holding was entered regarding the attempt of Act No. 656 to dispense with the presumption in favor of the trial court's ruling on a motion for new trial. In that case, the trial court had denied the defendant's motion for new trial, and this Court said:
"The record has been carefully examined; and while it may be conceded that the preponderance of the evidence was favorable to the defendant, yet in a case of this character, where the evidence was in conflict, the court is not called upon to set aside the verdict because it may not correspond with its opinion as to the weight of the evidence. We deem it unnecessary to discuss the testimony, but after a careful review of it we are not persuaded, under the familiar rule announced in Cobb v. Malone, 92 Ala. 630, 9 South. 738, that a reversal should be rested upon this action of the court. The trial court had the witness [sic] before him, and had the advantage of observing their manner and demeanor on the stand. Under the long-established rule of this court in such circumstances, the presumption is in favor of the correctness of his ruling. This rule has not been changed by recent legislative enactment.Acts 1914, p. 722. The reasoning in the cases of Hackett v. Cash, 196 Ala. 403, 72 South. 52, and [Finney v. Studebaker Corp. of America ], 196 Ala. 422, 72 South. 54, applies to the above cited act."
199 Ala. at 390, 74 So. at 380 (emphasis added).
In Broadway v. State, 257 Ala. 414, 60 So.2d 701 (1952), the Court reaffirmed these principles, striking down a statute that required a trial court to grant a mistrial when a prosecutor commented on a defendant's failure to testify. This Court described the effect of the statute:
"This was supposed to make it mandatory upon the circuit court to grant the motion for a new trial when any such comment is made during the progress of the trial, although no objection was made to such comment, and it may not appear that the comment was made in the presence of the jury, and although it may not appear that the comment was of such character as to be prejudicial to the defendant, and may have been of such character as that it could have been easily eradicated from the mind of the jury by prompt instructions from the court, and although it is possible that such would have been done if objection had been made."
257 Ala. at 415-16, 60 So.2d at 702. The Court observed that "the construction contended for would deprive both the trial court and this Court of exercising any judgment whatsoever in respect to the matter involved." 257 Ala. at 417, 60 So.2d at 703.
The Court in Broadway gave the following excellent discussion of how the statute at issue violated the principle of separation of powers:
"It has been the firm understanding of the courts in the interpretation of the constitution that those courts which derive their existence from the Constitution, succeeding common law courts of historic origin, cannot have their functions and their orderly processes disturbed by any legislative enactment....
"We made reference to that theory in the case of Ex parte Foshee, [246 Ala. *418 604, 21 So.2d 827 (1945),] where we cited an array of authorities on the subject.
"It is with great regret that we are constrained to declare, as we have rarely done, that a legislative enactment hampers the orderly functions of constitutional courts in this State, but it becomes necessary for us to do so when a case arises, and we are satisfied beyond a reasonable doubt that such is a proper interpretation of the situation.
"To give the 1949 amendment to section 305, supra, the effect which its language imports is to deprive the circuit court of its constitutional power to function in a judicial way in that respect. It cannot be rightly conceived that there is legislative competency to create a duty on the part of such a court without exercising any discretion or judgment, when a performance of that duty is an exercise of the judicial function, and if it is performed a compliance would result in the duty to perform a ministerial act on the part of the court to grant a motion for a new trial if the defendant is convicted and moves for a new trial. Such, it seems to us, is so plainly an infringement by legislative power upon judicial power that we cannot afford to labor under it. The Constitution which created the circuit court and this Court did not contemplate that it should be required to act ministerially in passing upon the rights and liberties of parties before those courts, when such act calls for a judicial function. It is with great reluctance we arrive at the conclusion that the amendment of June 23, 1949 cannot be given the effect which its language imports, and violates section 43 of the Constitution. It therefore does not substantially change the rule of law which theretofore existed."
257 Ala. at 417-18, 60 So.2d at 704-05.
Of course, the statute at issue here does not purport to take away all judicial discretion; in fact, it could be said to give the courts more discretion than they have hitherto exercised. However, its attempt to remove all presumption of correctness from a jury verdict and from a trial court's judgment would, if allowed, work a fundamental change in the manner in which common law courts have always exercised their judicial power and discretion.
The infringement on judicial discretion that would be caused by these Code provisions can best be shown by an examination of this Court's jurisprudence regarding motions for new trial, beginning with Cobb v. Malone, 92 Ala. 630, 9 So. 738 (1891), and continuing through Jawad v. Granade, 497 So.2d 471 (Ala.1986), even to the present day. The various Justices on the Court have, on many occasions during that 100-year period, conscientiously weighed the competing principles involved in review of rulings granting motions for new trial, and have, on even more occasions, performed their judicial duties in applying those principles to review of particular records and arguments in cases before the Court. We can scarcely think of any function that strikes closer to the heart of the judicial power.
Prior to 1891, a trial court's decision to grant or deny a motion for a new trial was not reviewable on appeal. "The granting, or the refusal of a new trial addresses itself to the discretion of the court trying the cause, and an appellate court will not inquire whether it was rightly refused, or the reasons which induced the decision were well founded." Spence v. Tuggle, 10 Ala. 538, 543-44 (1846); Barr v. White, 2 Port. 342 (Ala.1835); see Hubbard Bros. Constr. Co. v. C.F. Halstead Contractor, Inc., 294 Ala. 688, 693, 321 So.2d 169, 174 (1975) (Jones, J., dissenting).
Acts 1890-91, p. 779, granted such a right of review by appeal.[2] In Cobb v. *419 Malone, 92 Ala. 630, 9 So. 738 (1891), the Court first applied that act in reviewing a denial of a motion for a new trial. Because the Court's initial consideration of its power and its scope of review in such an instance is so well reasoned and so germane to this case, we reproduce the pertinent portions of that opinion:
"The act of February 16, 1891, `to allow appeals to the Supreme Court from decisions of the City and Circuit Courts in this State, granting or refusing to grant motions for new trials,' was intended to abrogate the rule, which has prevailed from the organization of the court, that the grant or refusal of a new trial is not revisable, and could not be assigned for error; and to lay the foundation for a review of the facts by appeal from the order on the motion for a new trial. The present appeal is taken directly from the decision of the court refusing to grant a new trial. The reasons stated in the motion are: `1. That the verdict of the jury was contrary to the evidence and the law of the case. 2. Said verdict was contrary to the charge of the court.'
"As the statute introduces a new practice in this State, and as this is the first appeal under it which has come before us, the occasion is opportune to consider its general effect and operation, and to lay down some general rule for the government of the court, though in so doing we may go beyond the necessities of this case....
"....
"The power to set aside verdicts has been generally regarded in this country as inherent in courts organized upon the principles of common law, though in some States it is regulated by statute, enumerating the grounds upon which a motion for a new trial may be made. The power is essential to prevent irreparable injustice in cases where a verdict wholly wrong is the result of inadvertence, forgetfulness, or intentional or capricious disregard of the testimony, or of bias or prejudice, on the part of juries, which sometimes occurs. But, in exercising the power, the court should be careful not to infringe the right of trial by jury, and should bear in mind, that it is their exclusive province to determine the credibility of witnesses, to weigh the testimony, and find the facts. Being selected for their impartiality and qualifications to judge facts, and unanimity of opinion and conclusion being required, their verdicts are presumed to be correct. It has been said, that no ground of new trial is more carefully scrutinized or more rigidly limited, than that the verdict is against the evidence.Hilliard on New Trials, 339. The power should be exercised, only, when it affirmatively appears that the substantial ends of justice require the examination of the facts by another jury. If these be the principles by which the trial court should be governed, they apply with much more force to the exercise of the power by an appellate court. When the presiding judge refuses to grant a new trial, the presumption in favor of the correctness of the verdict is thereby strengthened. He is selected because of his legal learning, sound judgment, and the confidence of the public in his impartiality, and the courage of his convictions of right and justice. He has heard and seen the witnesses testify, observed their tone and demeanor, and noticed their candor, or convenient failure of memory, to avoid impeachment, or for other improper purpose. The appellate court, possessing none of these aids and advantages, and receiving the evidence on paper only, is less qualified to determine what evidence is unworthy of belief, or what weight should be given to that which has been rejected by the jury, and may give undue weight to the testimony of some of the witnesses. Doubtless in view of these considerations, the power to grant new trials, or to correct errors of the Circuit or City Court in granting or refusing to grant the same, is conferred by the statute *420 upon this court, in general terms; no rules, by which it shall be governed, are prescribedleaving the power to be exercised in accordance with well recognized usages and rules in such cases, and in the mode in which, in the judgment of the court, the ends of justice will be best subserved.
"....
"When there is no evidence to support the verdict, it is clearly the duty of the court to grant a new trial; no court, possessed of a proper sense of justice, and a due regard for a fair and impartial administration of the law, can afford to allow such a verdict to stand. But, when there is evidence on both sides, or some evidence to support the verdict, it should not be set aside, because it may not correspond with the opinion of the court, as to the weight of the testimony, or because it is against the mere preponderance of the evidence. Comparing the analogous rules above stated, and the rules established by other appellate courts, we deduce therefrom, and lay down as rules for the guidance of this court, that the decision of the trial court, refusing to grant a new trial on the ground of the insufficiency of the evidence, or that the verdict is contrary to the evidence, will not be reversed, unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust. And decisions granting new trials will not be reversed unless the evidence plainly and palpably supports the verdict. Of course, these rules are not inflexible; but subject to exceptions and qualifications, dependent upon peculiar circumstances."
92 Ala. at 631-36, 9 So. at 738-40.
All of the above opinion has been unswervingly accepted as the law of this State except for the second sentence from the end of the quotation. That one sentence, regarding the review of orders granting new trials, caused the appellate courts of this state great difficulty for 95 years until it was expressly disapproved of in Jawad v. Granade, 497 So.2d 471 (Ala. 1986). See, e.g., Hubbard Bros. Constr. Co., supra; Adams v. Lanier, 283 Ala. 321, 216 So.2d 713 (1968); W.M. Templeton & Son v. David, 233 Ala. 616, 173 So. 231 (1937); McEntyre v. First National Bank of Headland, 27 Ala.App. 311, 171 So. 913 (1937). In Jawad the Court expressly overruled 18 cases that had reiterated the Cobb standard that an order granting a new trial would not be overturned unless the evidence plainly and palpably supported the verdict, and substituted the following test:
"[A]n order granting a motion for new trial on the sole ground that the verdict is against the great weight or preponderance of the evidence will be reversed for abuse of discretion where on review it is easily perceivable from the record that the jury verdict is supported by the evidence."
497 So.2d at 477.
The point here is not to revisit the controversy that Jawad settled. The point is that few questions try the appellate judicial decision-making power more sorely than the question, in the context of reviewing an order granting a new trial, of how to balance the constitutionally required deference to a jury's fact-finding against the principle, inherent in our common-law and constitutional system of trial and appellate courts, that an appellate court is extremely reluctant to overturn a trial court's ruling on a fact-based question.
Similarly, a trial court, in its initial consideration of the matter, is directed by the Constitution, the common law, and judicial experience to give great weight and deference to a jury's verdict. Thus, the legislature, in telling the constitutionally created and constitutionally empowered trial and appellate courts that they are not to give any presumption of correctness to a jury's verdict, contradicts the very essence of a judge's power, that of using his or her sound discretion to determine whether the evidence is so overwhelmingly against the jury's verdict as to overcome the presumption of correctness, or whether, for example, the constitutional right to trial by jury must be counterbalanced by the constitutional right to due process of law. Furthermore, *421 to the extent that "trier of the fact" in § 6-11-23(a) refers to a trial court sitting without a jury, the legislature has similarly intruded upon the appellate court's function, which inherently includes observing a certain deference based upon the trial court's ability to observe the witnesses and other such factors, as set out in the authorities discussed above.
For the foregoing reasons, we conclude that § 6-11-23(a) and § 6-11-24(a) violate §§ 42 and 43 of the Constitution of 1901. The parenthetical expression in the last sentence of § 6-11-23(b) is likewise unconstitutional and must be stricken.
Section 6-11-24(b) and the last sentence of § 6-11-23(b) direct the courts to "independently reassess" punitive damages verdicts and judgments. If these provisions are construed as requiring judges to exercise their functions free from improper influences, they are harmless, although superfluous, because they only reiterate what is already required. If they were given the construction that the trial court is directed to act independently of the jury and that the appellate court is directed to act independently of the findings of the trier of fact and independently of the trial court's judgment, they would be subject to the same infirmity as the attempted abolition of presumptions of correctness. Rather than strike those provisions under the latter interpretation, however, we hold that they are to be given the former interpretation and applied accordingly.
The first two sentences of § 6-11-23(b), not quoted above, read as follows:
"In all cases wherein a verdict for punitive damages is awarded, the trial court shall, upon motion of any party, either conduct hearings or receive additional evidence, or both, concerning the amount of punitive damages. Any relevant evidence, including but not limited to the economic impact of the verdict on the defendant or the plaintiff, the amount of compensatory damages awarded, whether or not the defendant has been guilty of the same or similar acts in the past, the nature and the extent of any effort the defendant made to remedy the wrong[,] and the opportunity or lack of opportunity the plaintiff gave the defendant to remedy the wrong complained of[,] shall be admissible; however, such information shall not be subject to discovery, unless otherwise discoverable, until after a verdict for punitive damages has been rendered."
Those two sentences are largely duplicative of procedures approved by this Court in Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989). Therefore, they merely supplement procedures already in place and are not subject to constitutional attack.
In summary, we hold that § 6-11-23(a), § 6-11-24(a), and the parenthetical phrase in the last sentence of § 6-11-23(b) are unconstitutional. Section 6-11-24(b) and the remaining portion of § 6-11-23(b) are constitutional as construed herein. The judgment is reversed and the cause is remanded for the trial court to reconsider the verdict in light of the appropriate presumption of correctness of the jury verdict and in accordance with Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986); Green Oil Co., supra; and succeeding cases.
REVERSED AND REMANDED.
ALMON, SHORES, ADAMS, KENNEDY and INGRAM, JJ., concur.
KENNEDY, J., files a specially concurring opinion, in which SHORES and ADAMS, JJ., concur.
MADDOX, HOUSTON and STEAGALL, JJ., dissent.
KENNEDY, Justice (concurring specially).
I concur in both the rationale and the result of the majority opinion. I write specially, because I would also hold that § 6-11-23(a), -24(a), and the portion of the last sentence of -23(b) that relates to the destruction of the presumption of correctness violate Art. I, § 11, of the Alabama Constitution.
Article I, § 11, provides in its entirety "That the right of trial by jury shall remain inviolate." Section 11's protection of the right of trial by jury applies to those cases *422 in which the right of trial by jury existed at common law or in which a jury trial was held at the time of the adoption of the Constitution. Ex parte Laflore, 445 So.2d 932, 934 (Ala.1983); W & H Machine & Tool Co. v. National Distillers & Chemical Corp., 291 Ala. 517, 283 So.2d 173, 175-76 (1973). At common law and at the time of the adoption of the Constitution, a fraud action carried a right of trial by jury. See, e.g., Ball v. Farley, 81 Ala. 288, 1 So. 253 (1887); Jordan & Sons v. Pickett, 78 Ala. 331 (1884); Baker v. Trotter, 73 Ala. 277 (1882); Einstein, Hirsch & Co. v. Marshall & Conley, 58 Ala. 153 (1887); Foster v. Kennedy's Administrator, 38 Ala. 359 (1862); M. Bigelow, The Law of Fraud (1877); and M. Bigelow, Treatise on Law of Fraud on its Civil Side (1888). Accordingly, Armstrong's action is protected by § 11.
These cited provisions violate § 11 on two major grounds: (1) they impermissibly permit the trial court and an appellate court to set aside a verdict of the trier of fact without regard to the propriety of that verdict; and (2) they destroy the presumption of correctness that attends a verdict of the finder of fact. This Court stated in Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986):
"We ... recogniz[e] that the right to a trial by jury is a fundamental, constitutionally guaranteed right, Art. I, § 11, Const. of 1901, and, therefore, that a jury verdict may not be set aside unless the verdict is flawed, thereby losing its constitutional protection."
493 So.2d at 1378.
Hammond was a unanimous decision of this Court addressing, among other issues, remittitur. This Court held in City Bank of Alabama v. Eskridge, 521 So.2d 931, 932 (Ala.1988):
"The right to a trial by jury in civil cases is guaranteed by § 11, Alabama Constitution; therefore, a jury verdict will not be set aside unless it is flawed thereby losing its constitutional protection."
These holdings reiterate that the right of trial by jury is a fundamental, constitutionally guaranteed right; that the proper enforcement of that right through the judicial system requires that litigants abide by the verdict, unless that verdict is flawed, thereby losing its constitutional protection; and that, accordingly, those who have rights protected by § 11 have the constitutional right to rely on the verdict, unless it is flawed.
The offending provisions do not require a finding that a verdict is flawed as a prerequisite for authorizing a court to set it aside. Instead, they simply authorize courts to disregard the verdict and to reassess the award of damages regardless of the propriety of the verdict rendered in the case. Accordingly, I would hold that these provisions violate the right of trial by jury guaranteed by § 11 of the Alabama Constitution.
I am of the further opinion that these provisions violate § 11 by destroying the presumption of correctness that attends a verdict. Consider that Hammond and Eskridge both held that (1) the right of trial by jury is a fundamental, constitutionally guaranteed right and (2) that, therefore, a verdict will not be set aside unless it is flawed and thereby caused to lose its constitutional protection. Those holdings necessarily imply that the right of trial by jury includes the presumption that a verdict is correct.
Although Hammond and Eskridge's holdings necessarily imply that proper enforcement through the court system of the right of trial by jury requires that the verdict be presumed correct, I would so hold even if those prior holdings had not so implied. Destruction of the presumption of correctness that attends the verdict degrades the verdict to nothing more than a preliminary advisory decision of ephemeral weight and substance, meaningful and significant only insofar as it comports with the decision of the trial court, which, with no necessary regard for the verdict, determines what it will award. The constitutional right of trial by jury provided by § 11 is a right to have the verdict accorded efficacy and binding effect, unless it is flawed. To destroy the presumption of correctness *423 that attends the verdict and thus to allow the trial court and appellate courts to rule without regard to the verdict violates the right of trial by jury at its most fundamental level.
I emphasize that § 6-11-24(b) and the portion of § 6-11-23(b) that we hold constitutional simply codify existing practices used in postjudgment review of verdicts. See Hammond; Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989). Our existing procedures for postjudgment review of verdicts have been upheld by the United States Supreme Court. Pacific Mutual Life Insurance Co. v. Haslip, ___ U.S. ___, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991).
Finally, I note that the discussion in the majority opinion and in this concurrence focuses on the constitutionality of the provisions in relation to their effect on the separation of powers and their effect on the right of trial by jury, not on constitutional entitlements to punitive damages. Neither the majority opinion nor this concurrence addresses the question of a constitutional entitlement to punitive damages.
SHORES and ADAMS, JJ., concur.
MADDOX, Justice (dissenting).
The Court today strikes down a portion of a legislative act that was a part of the so-called "Tort Reform" package and holds that a portion of the act regulating the award of punitive damages is violative of the separation of powers section of our state constitution, even though that theory was neither raised nor argued in the trial court or in this Court.
In striking down a portion of the legislative act and remanding the case to the trial court with directions to "reconsider the verdict in light of the appropriate presumption of correctness of the jury verdict and in accordance with Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986); Green Oil Co., [v. Hornsby, 539 So.2d 218 (Ala. 1989)]; and succeeding cases," this Court shows that the Hammond and Green Oil Co. procedures do not provide for an independent review of punitive damages awards, and further shows that the procedure the Supreme Court of the United States has just found "ensures meaningful and adequate review by the trial court whenever a jury has fixed the punitive damages"[3] is neither meaningful nor adequate to protect a defendant's "due process" rights.
What is especially distressing is the fact that a legislative act is declared unconstitutional on the ground that the legislature has violated the separation of powers provision of our state constitution, a ground that was neither presented nor argued in the trial court or in this Court.[4] In doing so, the Court fails to follow settled principles of statutory construction ordinarily applied when determining the constitutionality of acts of the legislature, and in sending the case back to the trial court with directions to accord the jury verdict a presumption of correctness, and to reassess the jury award, when the trial court has already done that, the Court completely destroys the procedure this Court heralds as protective of a defendant's "due process" rights and proves that the Supreme Court of the United States was mistaken when it called the procedure a "meaningful and adequate review by the trial court whenever a jury has fixed the punitive damages." Pacific Mutual Life Ins. Co. v. Haslip, ___ U.S. ___, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991).
*424 I cannot begin my dissent in this case any better than Mr. Justice Beatty did in his dissent in Fireman's Fund Am. Ins. Co. v. Coleman, 394 So.2d 334 (Ala.1980), when he explained why he had incorrectly joined the majority of this Court in the celebrated case of Grantham v. Denke, 359 So.2d 785 (Ala.1978), a decision Justice Beatty, in his dissent in Fireman's Fund, called a "judicial tar baby." 394 So.2d at 355. Justice Beatty said:
"At the outset it should be noted that my sole reason for dissenting at some length in this case is my desire that the questions here presented be resolved on the basis of sound legal doctrine. Adherence to established principles of law is a necessity in a case such as the instant case, for the issues before us are of fundamental importance to the integrity of our democratic system of government which is based upon the existence of three branches."

394 So.2d at 355. (Emphasis added.)
Summing up the reasons for changing his opinion about Grantham, he opined: "One firmly ingrained principle of jurisprudence which seems to have been overlooked in Grantham and its offspring is the presumption favoring constitutionality." 394 So.2d at 357. He further said that "[t]he continuing necessity for explaining [Grantham] and the explanations themselves have convinced me that the time has come for this Court to recognize and candidly admit that it erred in Grantham." 394 So.2d 355.
The opinion in this case, like the opinion in Grantham, is a sweeping decision, and it, too, may someday acquire the same appellation Justice Beatty gave to Grantham, because of its immense scope with regard to legislative power in dealing with the award of punitive damages.
The decision is erroneous in at least the following particulars: (1) It misconstrues the separation of powers provision of our state constitution; (2) it overlooks, or fails to apply, the settled principle of law regarding the presumption of validity that courts should accord to legislative acts; (3) it fails to recognize that the legislature has the power to regulate the award of punitive damages in this State, and that no person has a constitutional right to recover punitive damages; (4) it fails to recognize that the legislature can, by the adoption of an act of statewide application, set out the procedures to be followed in the trial courts of this State, even though this Court is granted the power to make rules of procedure by Amendment 328, Section 6.11, of the Constitution of Alabama, 1901; and (5) it fails to uphold the determination by the trial court, which applied standards of review this Court has found constitutionally permissible.

The Court Does Not Presume the Act is Constitutional
Justice Beatty, in his dissent in Fireman's Fund, expressed how courts should approach the interpretation of legislative power:
"The limitations upon the legislature's exercise of the police power are few; as was said in Alabama Federation of Labor v. McAdory, 246 Ala. 1, 13, 18 So.2d 810 (1944):
"`[The police] power must not be exercised arbitrarily or capriciously, and there must be some reasonable relation to the regulation and the ends to be attained. But if upon the matter men may reasonably differ, in view of all the circumstances, the legislative act in the exercise of the police power must be sustained.' [Emphasis added by Justice Beatty.]
"Men may indeed reasonably differ upon whether these immunity provisions are rationally related to permissible state objectives; the widely divergent views of the members of this Court abundantly support that proposition. In view of our own `reasonable disagreement,' it seems elementary that the statutes in question should be upheld on the police power ground.
"One firmly ingrained principle of jurisprudence which seems to have been overlooked in Grantham and its offspring is the presumption favoring constitutionality. Alabama State Federation of Labor v. McAdory, supra. In *425 McAdory, after noting the plenary power that is vested in the legislature, it was pointed out at 246 Ala. at 9, 18 So.2d at 815:
"`[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law.'"
394 So.2d at 357.
Did the legislature act arbitrarily or capriciously in adopting the two provisions of law that the Court has today declared unconstitutional? The answer to that question is obviously in the negative. The two Code sections the Court today declares unconstitutional were contained in House Bill 27, which was co-sponsored by 63 of Alabama's 105 Representatives.[5] House Bill 27 was a part of the so-called "Tort Reform" package, which received much public attention and which caused spirited and sometimes heated debate by partisans on one side or the other. The bill, when adopted by the legislature and approved by the Governor on June 11, 1987, became Act No. 87-185, and was intended to deal with the assessment and recovery of punitive damages in civil cases, and was indisputably intended to protect civil defendants against excessive punitive damages awards and to accord to civil defendants the guarantees of "due process" contained in both our State and Federal Constitutions.

The Act Does Not Violate Section 43 of the Constitution
Why does the Court declare the subject portions of Act 87-185 unconstitutional? The per curiam opinion states that it is because Act 87-185 specifies that it eliminates the presumption of correctness of jury verdicts[6] awarding punitive damages, and because, in eliminating this presumption, the legislature was exercising a power granted to the judiciary. I can find no provision of the Alabama Constitution that states that a party has a constitutional right to recover punitive damages and to have a jury's determination of the amount of such damages presumed correct. Although the Supreme Court, in Haslip, did not find the common law method of assessing punitive damages to be constitutionally infirm "per se," that Court did, in footnote 9, mention that the Alabama legislature had placed a $250,000 cap on punitive damages awards, and the Court cited favorably an Ohio statute that placed a cap on such awards and placed in the trial judge, not the jury, the power to make the awards.[7]

There is No Constitutional Right to Punitive Damages
It is settled beyond question that a party does not have a constitutional right to recover punitive damages, but even assuming that a person did have a right to recover such damages, it should be noted that the sections declared unconstitutional in this case do not take away a plaintiff's right to recover punitive damages. They provide only that the amount of those damages, as determined by the trier of fact, is not presumed *426 to be correct, but must be reviewed, as was the case here, by the trial judge, taking into consideration several factors.[8]

As Interpreted Here, Hammond Procedures are Inadequate
The procedure adopted by this Court in Hammond and Green Oil Co. to review jury awards of punitive damages has been commended as a procedure designed to ensure that a defendant's constitutional right to due process of law will be protected. A majority of this Court said the following in Pacific Mut. Life Ins. Co. v. Haslip, 553 So.2d 537, 543 (Ala.1989), affirmed, Pacific Mutual Life Ins. Co. v. Haslip, ___ U.S. ___, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991):
"We also note that, in an abundance of concern for the preservation and protection of a defendant's constitutional right to due process of law, this Court has adopted guidelines to be used by the trial court in reviewing judgments. [Citing Hammond; Harmon v. Motors Ins. Corp., 493 So.2d 1370 (Ala.1986); and Alabama Farm Bureau Mut. Cas. Ins. Co. v. Griffin, 493 So.2d 1379 (Ala. 1986).]"
The Court then said:
"[The guidelines] require the trial judge to reflect on the record his or her reasons for either interfering or not interfering with a jury's verdict."
553 So.2d at 543.
The "concern for the preservation and protection of a defendant's constitutional right to due process of law" that this Court expressed in Haslip, 553 So.2d at 543, seems hollow in view of today's holding. Similarly, the statement by the Supreme Court of the United States in Haslip that "[t]he Hammond test ensures meaningful and adequate review by the trial court whenever a jury has fixed the punitive damages," ___ U.S. at ___, 111 S.Ct. at 1044, is meaningless if the "meaningful and adequate review by the trial court" (emphasis added) can be overturned by a stroke of an appellate court's pen, as has happened here. If the verdict of the jury is presumed to be correct, how "meaningful and adequate" can the review by the trial court and this Court be? It would not be meaningful and adequate unless the reviewing court could conduct an independent review.

The Supreme Court of the United States was Mistaken Concerning the Adequacy of Hammond Review Procedures
From my reading of the decision of the Supreme Court of the United States in Haslip, I find it bottomed to a great degree on the independent review by the trial court and by this Court. In fact, Haslip's counsel argued in the Supreme Court that Alabama's procedures provided an "independent review."[9] This decision, which overturns a judgment by the trial court in exercising that independent review, should be proof positive that this Court does not consider that the Hammond and Green Oil Co. standards authorize the type of "independent review" Haslip's counsel described to the United States Supreme Court, and that the procedure that Court called "meaningful and adequate," ___ U.S. at ___, 111 S.Ct. at 1035, is neither meaningful nor adequate.
Not only does this decision show that the Hammond and Green Oil Co. standards *427 are inadequate, as I stated in a dissent in Haslip, 553 So.2d at 544, but the principles of law contained in this decision are a harbinger of what is to follow. If the legislature cannot say that a jury's verdict is not presumed to be correct, can it say that a verdict cannot exceed $250,000? If the legislature cannot say a jury's verdict is not presumed to be correct, how can it regulate the award of such damages in any particular? Is this Court the only branch of government that can regulate the award of punitive damages? The decision raises each of these questions, and we can be sure that they will be presented in future cases.
The least that the decision shows is that the procedures this Court adopted in Hammond and Green Oil Co., and which to a large degree are the basis for the Supreme Court's affirmance of Haslip, will not protect the constitutional rights of defendants to "due process" of law, because the trial judge in this case, following the very procedures that this Court said were sufficient to protect a defendant's due process rights, and the same procedure the Supreme Court of the United States in Haslip stated "ensures meaningful and adequate review," found, under the facts of this case, that an award of any punitive damages was inappropriate.

Courts Should Construe Legislative Acts With Every Presumption and Intendment in Favor of Validity
The McAdory rule states that a court must sustain an act unless it is "clear beyond reasonable doubt that it is violative of fundamental law." Alabama Federation of Labor v. McAdory, 246 Ala. 1, 18 So.2d 810 (1944). If the McAdory rule were applied in this case, could it be found "clear beyond reasonable doubt" that the legislature could not pass legislation to address what it considers to be the same "concern" alluded to by this Court in Haslip of the right of defendants to "due process" of law? Obviously not.
Based on all the foregoing reasons, I am compelled to dissent.
HOUSTON, Justice (dissenting).
At the oral argument before the United States Supreme Court on the writ of certiorari to review the judgment of this Court affirming an award of punitive damages in the case of Pacific Mutual Life Insurance Co. v. Haslip, 553 So.2d 537 (Ala.1989), in which the constitutionality of the method of awarding punitive damages was challenged, Bruce J. Ennis, Jr., Esq., Washington, D.C., on behalf of Ms. Haslip, made one of the most impressive arguments that I have ever read. That argument concluded with the following words of wisdom:[10]
"There does not have to be a constitutional remedy for every social problem.... I think this is a paradigmatic case for judicial restraint, not judicial activism."
I think that the case now before us is likewise "a paradigmatic case for judicial restraint, not judicial activism."
I am almost persuaded by the per curiam majority opinion, for I am a strong advocate of the separation of powers doctrine, as each Justice must be after reading the plain, unambiguous words of § 43 of the Alabama Constitution 1901. However, to hold portions of § 6-11-23 unconstitutional as violative of this constitutional mandate, the majority opinion requires that we declare that this case presents such a "unique situation" that we must deviate from our judicially proscribed standard of review of not holding a statute unconstitutional except on a basis specifically argued and presented in the case after the attorney general, the chief legal officer of the state, has been given an opportunity to address the particular constitutional challenge to the duly enacted law. There were only two constitutional challenges to Ala.Code 1975, § 6-11-23, filed by Armstrong in the trial courta challenge under Article I, § 11 (right of trial by jury) and a challenge *428 under § 13 (right through due process to remedy for injury). These were the challenges that the trial court ruled upon. These were the challenges presented to the attorney general of Alabama for his consideration. These were the challenges argued in briefs here.
It is judicial activism at its worse to reverse a trial court's judgment on an issue on which that court had no opportunity to rule, and I refuse to do it.
It is also judicial activism at its worse to declare a statute unconstitutional as violative of a constitutional provision when the attorney general of this State has not been notified of the nature of the constitutional attack, and I refuse to do it.
Having said this, I look to the Constitution to see if the majority's holding could be wrong or if the law is so settled that awaiting a proper constitutional challenge would be an exercise in futility. Without deciding, for we should not decide this issue in this case, but merely to see if any argument could be made in opposition to the majority's holding, I note the following:
The powers of the government of the State of Alabama were divided into three distinct departments by the Alabama Constitution 1901, Article III, § 42. In § 43, the Constitution prohibits the legislative department from exercising "the executive and judicial powers, or either of them ... except in the instances in this Constitution hereinafter expressly directed or permitted."
As I go through the constitutional provisions relating to the legislative, executive, and judicial powers, I will review the right of any of these three departments of government to impose judicial standards of review and will review any prohibitions against a department's imposing such standards, and, because the standards of review relate only to punitive damages, will review the power to impose, or the prohibition against imposing, punitive damages.
If the judicial review of, or the imposition of, punitive damages is an executive or judicial power, then § 43 prohibits the legislature from exercising that power; and unless the legislature was "expressly directed or permitted" to exercise that power by another provision of the Constitution, it is prohibited from interfering with a judicial standard of review or the imposition of punitive damages.
There is nothing in the Constitution that gives the executive department the power to promulgate judicial standards of review. Article V, § 124, of the Constitution gave the Governor, who by Article V, § 113, is given "[t]he supreme executive power of this state," the power to grant "remission of fines and forfeitures." "Remission," although usually defined as "[a] relese or extinguishment of a debt," Black's Law Dictionary 1294 (6th ed. 1990), is also defined as the "act of remitting." Id. The verb "remit" is defined as "to cancel (a penalty or punishment). To pardon; forgive... to diminish; abate." American Heritage Dictionary of the English Language, 1100 (1969). A "fine" can consist of a pecuniary penalty recoverable in a civil action as well as a pecuniary penalty imposed upon a person convicted of a crime. Black's Law Dictionary 632 (6th ed. 1990); but, see 36 Am.Jur.2d 613, Forfeitures and Penalties § 4 (1968) (although the words "fine" and "penalty" are sometimes used interchangeably to denote the same thing, a "fine" is generally a sum of money exacted of a person guilty of a crime or contempt, as a pecuniary punishment). In any event, Amendment No. 38 of the Constitution took the power to remit fines and forfeitures from the executive department and gave it to the legislative department "The legislature shall have power to provide for and to regulate the ... remission of fines and forfeitures...." See, Swift v. Esdale, 293 Ala. 520, 523, 306 So.2d 268, 271 (1975). It appears to me that there is nothing in the Constitution that explicitly makes the imposition of punitive damages in Alabama a power of the executive department.
By Amendment No. 328 of the Constitution (establishing the judicial department), the judicial power of the state is vested exclusively in a unified judicial system, "[e]xcept as otherwise provided by this *429 Constitution." Section 6.11 of Amendment No. 328 provides:
"The supreme court shall make and promulgate rules governing the administration of all courts and rules governing practice and procedure in all courts; provided, however, that such rules shall not abridge, enlarge, or modify the substantive right of any party nor affect the jurisdiction of circuit or district courts or venue of actions therein; and provided, further, that the right of trial by jury as at common law and declared by section 11 of the Constitution of Alabama 1901 shall be preserved to the parties inviolate. These rules may be changed by a general act of statewide application."

(Emphasis supplied.)
The words "[t]hese rules" in the last sentence of this section have been interpreted by this Court as giving the legislature the power to change any rule adopted by this Court for the administration of all courts and governing practice and procedure if the legislature does so by a general act of statewide application, Cowin Equipment Co. v. Robison Mining Co., 342 So.2d 910 (Ala.1977); Green v. Austin, 425 So.2d 411 (Ala.1982), thereby resolving the conflict in the opinions predating the ratification of Amendment No. 328 as to whether the legislature had such power.[11] For this reason, I cannot deviate from our standards of review and hold the act violative of § 43 of the Constitution. It appears to me that § 6.11 of Amendment No. 328 of the Constitution took away from the judicial department many traditional powers of the judicial department. What is the reach of the phrase "these rules"? Does that phrase apply to standards of review? Is a standard of review a rule of practice and procedure, which can be changed by a general law? In reference to the presumption affecting review, 5 Am.Jur.2d 151 Appeal and Error § 704 (1962) states: "The applicability of the presumption may be excluded by statute," citing Tony v. State, 144 Ala. 87, 40 So. 388 (1906). This certainly causes me to think that the majority's holding could be wrong.
It appears to me that there is nothing in Amendment No. 328 of the Constitution that explicitly makes the establishment of judicial standards of review of, or the imposition of, or the method of ascertaining the amount of, punitive damages awarded in Alabama a power of the judicial department.
The legislative department of the government of the State of Alabama is expressly prohibited from enacting certain legislation. However, the legislature is not expressly prohibited from removing a presumption of correctness from the amount of punitive damages awarded by the trier of fact, as it is prohibited from authorizing lotteries (§ 65); from granting or authorizing counties or municipalities to grant extra compensation, fee, or allowance to any public officer after service has been rendered or contract made (§ 68); from taxing property of the state, counties, or municipalities (§ 91); from impairing the obligation of contracts, from reviving any right or remedy after it has been barred by lapse of time, or from taking away a cause of action or destroying an existing defense after the cause of action has been commenced (§ 95); from paying the salary of a deceased officer beyond the date of his death (§ 97); from retiring any officer on pay or part pay (§ 98); from donating lands under the control of the state to private corporations or individuals (§ 99); from remitting, releasing, postponing, or diminishing any obligation or liability of any person or corporation held or owned by the state (§ 100); from suspending or exempting *430 from the general law any individual or private corporation (§ 108).
Article IV, § 104, of the Constitution (dealing with special, private, and local laws), provides in pertinent part: "The legislature shall pass general laws for the cases enumerated in this section...." (Included in the enumerated cases are: "[e]xempting any individual, private corporation, or association from the operation of any general law"; "[e]xempting any person from jury, road, or other civil duty"; and "[r]emitting fines, penalties, or forfeitures.")
Under Article IV of the Constitution, "general laws" are laws that in their terms and effect apply "either to the whole state, or to one or more municipalities of the state less than the whole in a class." Amendment No. 397, amending § 110 of the Constitution. There is no contention that what is now § 6-11-23 was not enacted as a general law.
"Exempt" is defined as "[t]o release, discharge, waive, relieve from liability." Black's Law Dictionary 571 (6th ed.1990). Section 104 allows the legislature to relieve any individual, private corporation, or association from the operation of any law that applied to the whole state at the time the Constitution was ratified. The provisions of § 104 did not appear in the Alabama Constitution of 1875.
The term "law" in our jurisprudence includes the rules of court decisions as well as legislative action. Warren v. United States, 340 U.S. 523, 526, 71 S.Ct. 432, 434, 95 L.Ed. 503 (1950). Law is the body of principles, standards, and rules that the courts of a particular state apply in the resolution of controversies brought before them. Restatement of Conflict of Laws § 3 (1934).
It appears to me that the legislature has the explicit constitutional power to change the body of principles, standards, and rules that the courts of this state apply to the whole state in the decisions or controversies brought before them, by virtue of Article IV, § 104(9) ("[e]xempting any individual, private corporation, or association from the operation of any general law"), by an act that applies to the whole state.
"Civil" is defined as "[o]f or relating to the state or its citizenry. Relating to private rights and remedies sought by civil actions as contrasted with criminal proceedings." (Emphasis supplied.) Black's Law Dictionary 244 (6th ed. 1990). "Duty" is defined as "[a] human action which is exactly conformable to the laws which require us to obey them. Legal or moral obligation.... Obligatory conduct or service. Mandatory obligation to perform." Black's Law Dictionary 505 (6th ed. 1990).
Therefore, § 104(26) explicitly empowers the legislature to relieve a person from civil liability for the violation of any legal or moral obligation owed to another person, if this is done by an act that applies to the whole state.
"Remit" is defined as "[t]o give up; to pardon or forgive; to annul; to relinquish; as to remit a fine, sentence, or punishment." (Emphasis in original.) Black's Law Dictionary 1294 (6th ed. 1990).
"Penalty" is defined as "[a]n elastic term with many different shades of meaning; it involves idea of punishment, corporeal or pecuniary, or civil or criminal, although its meaning is generally confined to pecuniary punishment." Black's Law Dictionary 1133 (6th ed. 1990). For a distinction between "fine," "penalty," and "forfeiture," see 36 Am.Jur.2d Forfeitures and Penalties §§ 3-5, at 613-14.
"Punitive" is defined as "[r]elating to punishment; having the character of punishment or penalty; inflicting punishment or a penalty." Black's Law Dictionary 1234 (6th ed. 1990). In Alabama the purpose for awarding punitive damages is to vindicate and protect a public right by punishing wrongdoers and deterring them and others from committing similar wrongs in the future. Dees v. Gilley, 339 So.2d 1000 (Ala.1976); Boise Cascade Corp. v. Lee, 291 Ala. 666, 286 So.2d 836 (1973).
Therefore, Article IV, § 104(28), explicitly empowers the legislature to give up or to relinquish any pecuniary civil punishment by an act that applies to the whole *431 state. This Court has held that punitive damages may be forbidden or may be affirmatively withheld by legislative enactment, without specific reference to this section of the Constitution. Meighan v. Birmingham Terminal Co., 165 Ala. 591, 51 So. 775 (1910); Comer v. Age-Herald Publishing Co., 151 Ala. 613, 44 So. 673, 13 L.R.A. (N.S.) 525 (1907).
It appears to me that the legislative department has the explicit power to remit penalties if it does so by a law that applies to the whole state. Article IV, § 104(28).
The legislature has the explicit power to exempt from the operation of any general law, to exempt from any civil duty, and to remit fines, penalties, and forfeitures by a general law that applies to the whole state, as § 6-11-23 does (see, Article IV, § 104(9), (26), (28)). These explicit powers may be broad enough to cover the removal of a presumption of correctness from the amount of punitive damages awarded by the trier of fact.
It appears to me that the separation of powers doctrine does not implicitly deprive the legislature of this power. Therefore, the majority's holding would be wrong. Clearly, it is based on cases involving legislative power, or a lack thereof, that predate § 6.11 of Amendment 328. I do not believe that it would be an exercise in futility for this Court to await a proper § 43 challenge to § 6-11-23 or § 6-11-24.
Justice Kennedy's special concurrence relates to a challenge under Article I, § 11, of the Constitution, a challenge that is properly before us. His special concurrence is premised upon this constitutional attack's having nothing to do with entitlement to punitive damages. Perhaps if I could accept that premise, I could agree with his special concurrence, for I firmly believe that the Alabama Constitution of 1901 restricts the legislative department and the judicial department of state government from intruding into the jury's factfinding function in civil actions, See, Tatum v. Schering Corp., 523 So.2d 1042, 1048-49 (Ala.1988) (Houston, J., dissenting). I strongly believe in the constitutionally guaranteed right to trial by jury, and my belief that the jury has the ability to resolve disputes fairly and well was enhanced by my serving on a civil jury while a Justice on this Court. However, to me it seems that § 6-11-23 applies to nothing but punitive damages. The title of the Act (Act No. 87-185, Acts of Alabama 1987, Vol. 1, pp. 251-54) begins with the phrase "Relating to punitive damages in civil actions...." The phrase "punitive damages" appears 11 times in the title of the Act. Article 2 of Chapter 11 of Title 6 of Ala.Code 1975, in which § 6-11-23(a) appears, is styled "Punitive Damages"; but more importantly, the "no presumption of correctness" applies to what? To the amount of punitive damages awarded by the trier of fact[12] and to that only!
If I am to apply legal reasoning, which I should and must as a Justice on the Alabama Supreme Court, I must begin with the premise that § 6-11-23 applies to punitive damages. What else does it apply to? Nothing! Punitive damages only. Then, I must examine the source documentthe Alabama Constitution of 1901to see if there is an individual right that is a protected right under the Constitution ("individual right" or "individual rights") to receive the amount of punitive damages awarded by a jury or an individual right to have a jury determine the amount of punitive damages to be awarded. This can be done only by examining the Constitution in conjunction with the nature and history of punitive damages.
There is no reference in the Alabama Constitution of 1901 to punitive damages, nor does the Constitution explicitly provide either how punitive damages can be assessed or whether the amount of punitive damages can be restricted. Therefore, there is no individual right to recover punitive damages or to have a jury determine the amount of punitive damages that is afforded explicit protection under the Alabama *432 Constitution of 1901 from any of the three departments of governmentlegislative, executive, or judicial.
All Alabamians have individual rights that are protected from the exercise of any governmental powers (legislative, executive, or judicial) in ways inconsistent with Alabamians' conceptions of the inalienable rights of life, liberty, and the pursuit of happiness.[13] Neither the legislative, the executive, nor the judicial department of government can abolish these explicit individual rights, no matter how laudable the purpose for doing so may be or what societal quid pro quo may be given. No department of government can abolish jury trials in civil or criminal cases, in which an individual was entitled to a jury at common law, or close the civil courts, even to spend the money that is spent on jurors or on the operation of the civil courts to properly fund an effective juvenile justice system, which is sorely needed within this State. There is an individual right to have a dispute resolved through the regular course of administration of law through courts of justice (Article I, § 13) and a right to a jury in certain cases (Article I, § 11), if demanded by one of the parties.
As previously noted, there is no individual right to receive the amount of punitive damages assessed by a jury or a court (if *433 the court acts as the trier of fact), or to have a jury determine the amount of punitive damages, without restriction or without limitation, that is afforded explicit protection under the Constitution from legislative, executive, or judicial action.
By the Acts of Congress creating a territorial government in Alabama and admitting her into the Union, the common law of England, as it prevailed before the American Revolution "as modified by our own institutions" from the Revolution until 1819, was extended over the whole of the geographical area of Alabama to the exclusion of the laws of Spain and France. Pollard v. Hagan, 44 U.S. (3 How.) 212, 229, 11 L.Ed. 565 (1845). The subsequent ratification of the Alabama Constitution of 1901 effected a "freezing" of the right to a jury trial in Alabama as that right existed at common law in 1901. Article I, § 11, Alabama Constitution of 1901, did not extend the right to a trial by jury to cases in which that right did not exist at the time of its ratification. Gilbreath v. Wallace, 292 Ala. 267, 269-70, 292 So.2d 651 (1974).
Juries were allowed to assess punitive damages at common law, L. Schleuter and K. Redden, Punitive Damages, § 1.3, at 12 (2d ed. 1989), and such damages were awarded to the injured parties who brought suit. For example, in Rhodes v. Roberts, 1 Stew. 145, 146-47 (Ala.1827), in affirming a $1,500 judgment against the defendant under a trespass theory for shooting the plaintiff with a "steamboat gun," this Court held:
"Where the injury is to the person of the plaintiff, the amount of damages cannot be measured by any certain and precise standard. The negligence may be very gross and reprehensible, and in all such cases the jury may give smart money, if in their view the circumstances are such as to require it."

(Emphasis supplied.) However, even though juries were allowed, in proper cases, to assess punitive damages at common law, and even though such damages were awarded to the injured parties who brought suit, punitive damages at common law were assessed for the purpose of vindicating and protecting society's (i.e., the public's) right to be free from certain kinds of egregious tortious conduct, not for the purpose of providing a private compensatory remedy. See, e.g., Garrity v. Lyle Stuart, Inc., 40 N.Y.2d 354, 386 N.Y.S.2d 831, 353 N.E.2d 793 (1976), where the New York Court of Appeals, holding that an arbitrator had no authority to assess punitive damages for the breach of a publishing contract, stated, in pertinent part, as follows:
"For centuries the power to punish has been a monopoly of the State, and not that of any private individual [__. Kelsen, General Theory of Law and State, p. 21 (19__) ]. The day is long past since barbaric man achieved redress by private punitive measures."
See, also, J.D. Calamari and J.M. Perillo, Contracts, § 14-31, at 564 (2d ed. 1977). This Court has also held that redress by private, punitive measures is not available to the citizens of this state. See Meighan v. Birmingham Terminal Co., 165 Ala. at 598-99, 51 So. at 777-78, where this Court stated:
"If conceivably a verdict for punitory damages might have been based upon these facts, we think the passage of the act of March 6, 1907, before the time of the trial, though subsequent to the infliction of the injury, ... had the effect to relieve defendant of liability for damages which it is assumed might otherwise have been assessed for the purpose of punishment. Such damages are assessed in proper cases in the interest of the state. They are awarded not for the compensation of the plaintiff, but as a warning to other wrongdoers. A plaintiff has no right to maintain an action merely to inflict punishment. Exemplary damages are in no case a right of the plaintiff, but are assessed at the discretion of the jury for the purpose indicated.... The state had the right to remit punitory damages, and by implication did so when it passed the act of ratification. That act could not, of course, have had effect in the way of divesting previously vested rights, and by its terms, out of abundance of caution *434 merely, those rights were preserved. The plaintiff's right to complete and adequate compensation for property taken or injured, including injury to his special right in the highway as a means of enjoying the free and convenient use of his abutting property, remained without impairment."
(Emphasis supplied.) See, also, Comer v. Age-Herald Publishing Co., supra.
Therefore, there is no individual right to receive the amount of punitive damages assessed by a jury or a court (if the court acts as the trier of fact), or to have a jury determine the amount of punitive damages, without restriction or without limitation, that is afforded implicit protection under Article I, § 11, of the Alabama Constitution of 1901 ("[t]he right of trial by jury shall remain inviolate").
Section 11 of the Alabama Constitution froze the right of trial by jury as it existed at common law or under statutory law at the time of the adoption of the 1901 Constitution. Gilbreath v. Wallace, 292 Ala. at 269-70, 292 So.2d at 652-53 (1974).
If this prohibited the Legislature from taking away the power of the jury to impose punishment or to deter, all criminal sentences imposed by trial courts, since at least 6:00 p.m. on May 16, 1977, for murder, manslaughter, rape, robbery, petty larceny, carrying concealed weapons, selling mortgaged property, and all fines for every offense for which the defendant was indicted, are unconstitutional. Alabama Code 1897, § 5415, provided:
"When an offense is punishable by imprisonment in the penitentiary, or hard labor for the county, the court must impose the term of punishment, unless the power is expressly conferred on the jury."
At the time of the ratification of the Constitution of 1901, the power was expressly conferred on juries to impose the term of punishment for defendants found guilty of murder (Ala.Code 1897, § 4858), manslaughter (§ 4862), rape (§ 5444), robbery (§ 5479), petty larceny (§ 5050), carrying a concealed weapon (§ 4420), and selling mortgaged property (§ 4758). I have not exhaustively examined the Alabama Code of 1897 or the Acts of the Legislature enacted between the enactment of that Code and the ratification of the Constitution of 1901, to determine if there were other such offenses.
Code 1897, § 5415, provided:
"In prosecution by indictment, the jury shall fix and determine the amount of the fine; and no judge shall remit or reduce the fine so fixed unless he spreads his reasons for so doing in full on the minutes of his court."

(Emphasis supplied.)
Acts of Alabama 1977, No. 607, § 1205, now Code of Alabama 1975, § 13A-5-2, confers upon the trial court the power to punish by imprisonment and fine. Brown v. State, 401 So.2d 213 (Ala.Crim.App. 1981), cert. denied, 401 So.2d 218 (Ala. 1981).
If a bill has been duly enacted by the Alabama Legislature in accordance with the Alabama Constitution of 1901, Article IV, and has been approved by the Governor in accordance with Article V, § 125, the State has acted. If the State has the right to allow the trial court to review, without a presumption of correctness, a jury's award of punitive damages, and if the State has done so, what gives the judiciary the power to interfere with that right, by judicial review? The concept of judicial review is based on Chief Justice Marshall's opinion in Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803), that it is "the province and duty of the judicial department to say what the law is"; that is a bedrock for the process of judicial review. American history, as a bedrock, also makes it clear that people instituted this government primarily to assure individual liberty. It was not established to allow some form of government to do what a king or a parliament, which had made itself the dernier judge in its dealing with the American colonies, had done or attempted to do. The Bill of Rights enumerated wide areas where individuals would be free simply because it was thought to be their natural righta birthright. This concept has been incorporated into all of the Alabama Constitutions as "Article I, Declaration of Rights." This is as it should be, for we *435 should think of individual liberty or rights first, and, second, we should think of the means of securing that liberty or those rights. Article III of the Alabama Constitution provides for the distribution of the powers of government; Article IV provides for the legislative department; Article VI provides for the judicial department (replaced and enacted in whole by Amendment 328, proclaimed ratified December 27, 1973); and Article VIII provides for suffrage and election. Alabama adopted individual liberty as one cornerstone and majority rule as the other cornerstone in its establishment of "`the wisest and happiest government that human wisdom can contrive.'"[14]
Therefore, in Alabama there are wide areas of life in which majorities are entitled to rule, if they wish, simply because they are majorities. The enactment and execution of most laws come within the ambit of majority rule, for a majority vote of the legislature, composed of senators and representatives elected by a majority vote in their respective districts, passed a bill and sent it to the Governor, elected by a majority vote of the citizens of this state, for his approval or veto; and the Governor has permitted this bill to become law. The majority rules.
However, there are some things that majorities must not do to minorities, some areas of life in which the individual is free of majority rule.
Judicial review of legislation that has been duly enacted by the legislature and approved by the Governor and that expresses the will of the majority, as best it can be expressed in a representative form of government, should be limited to whether the act intrudes into that area of life that the Constitution has reserved to the individual as being free from majority rule, i.e., whether it has intruded on individual rights. If it does, the judiciary must not be timid in declaring the act unconstitutional, even though to do so would go against the wishes of the present majority. Sylvia Snowiss, in Judicial Review and the Law of the Constitution, 221 (Yale University Press 1990), expresses this delicate balance better than I can:
"Underuse destroys judicial review's legal character as a routine legal restraint on popular will. At the same time, overuse brings the judiciary too far from the legal requirement that it not make law. Modern constitutional law accommodates and even demands great boldness and serious restraint."
I believe that there must be a judicial commitment to legal reasoning when testing the constitutionality of laws, just as there must be a judicial commitment to legal reasoning in cases not involving constitutional issues.
I keep a copy of the following quotation from Henry David Thoreau's Walden, p. 121 (Walter J. Black, Inc. 1942), on the wall of my office:
"Let us settle ourselves, and work and wedge our feet downward through the mud and slush of opinion, and prejudice, and tradition, and delusion, and appearance,... till we come to a hard bottom and rocks in place, which we call reality, and say, This is, and no mistake."
When I apply this test, which is but another way of defining what I consider to be the process of legal reasoning, I cannot hold that by the enactment of § 6-11-23 or § 6-11-24, the majority of Alabamians has deprived any Alabamian of an individual right. Therefore, in accordance with our representative democracy, the majority should rule. It is judicial activism at its worst, prohibited by § 43 of the Alabama Constitution of 1901, to thwart the will of the majority of Alabamians when no individual right protected by the Constitution is endangered.
Based on the foregoing, I cannot hold that any part of § 6-11-23 is unconstitutional. For the same reason, I could not hold that § 6-11-24 is unconstitutional if that section were properly before us.
STEAGALL, Justice (dissenting).
I would accord to the acts declared invalid by the majority the strong presumption of constitutionality contemplated by this *436 Court in Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 18 So.2d 810 (1944). That case stated:
"[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of government.... [I]t is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law."
246 Ala. at 9, 18 So.2d at 815. McAdory goes on to quote the following language of the United States Supreme Court: "`The cardinal principle of statutory construction is to save and not to destroy.'" 246 Ala. at 10, 18 So.2d at 815, quoting National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937).
While I believe in the constitutional separation of powers, I do not feel that the per curiam opinion, in declaring Ala.Code 1975, §§ 6-11-23(a) and 6-11-24(a) and a portion of § 6-11-23(b), violative of §§ 42 and 43 of the Alabama Constitution of 1901, accords those sections the necessary presumption of constitutionality. I do not consider it "clear beyond reasonable doubt" that the legislature was without the power to enact these statutes; therefore, I respectfully dissent.
NOTES
[1] This Code section was a successor of the act, discussed below, that originally gave appellate review of orders on motions for new trial.
[2] It might be thought that this discussion contradicts itself in acknowledging without question that the legislature has on various occasions passed statutes granting rights of appeal and in some respects regulating appeals, while insisting that the legislature cannot intrude upon the judicial function in the consideration of appeals. It has long been recognized, however, that the right of appeal is a statutorily created right, see the cases annotated at 2 Ala. Digest, "Appeal & Error," Key # 1, and that the legislature can regulate the procedure for an appeal "unless by doing so it prohibits the due and orderly processes by which that court functions, or prevents it from properly functioning." Ex parte Foshee, 246 Ala. 604, 607, 21 So.2d 827, 829 (1945).
[3] Pacific Mutual Life Ins. Co. v. Haslip, ___ U.S. ___, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991).
[4] Appellant, in his brief, lists the issues presented on appeal, as follows:

"A. Whether `de novo' review of punitive damages jury awards violates Article I Section 11 of the Alabama Constitution guaranteeing a right to trial by jury?
"B. Whether `de novo' review of punitive damages awards violates Article I Section 13 of the Alabama Constitution guaranteeing a remedy by due process of law and that right and justice be administered without sale, denial or delay?
"C. Whether `de novo' review of punitive damages jury awards violates the equal protection and due process provisions of the United States and Alabama Constitutions?"
[5] Those whose names appear on the printed Act, Act 87-185, Acts of Alabama, 1987, p. 251, are: Higginbotham, Clark (J), Carothers, Flowers, McMillan, Carter, Johnson (RG), Zoghby, Grouby, Richardson, Laird, Blakeney, Beasley, Hooper, White (L), Layson, Turnham, Harper, Wright, Hettinger, Adams, White (F), Beers, Burke, Butler, Willis, Hammett, Seibels, Breedlove, White (G), Curry, McKee, Headley, Gaston, Moon, Bugg, Venable, Harvey, Kvalheim, Knight, Turner, Penry, Reed, Freeman, Walker, Haynes, Gray, Ford, Petelos, Logan, Slaughter, Faulk, and Newman.
[6] The Act actually uses the term "trier of fact," which could include both a jury and a judge sitting without a jury.
[7] Mr. Justice Anthony Kennedy, in his special concurrence in Haslip, stated, "Were we sitting as state court judges, the size and recurring unpredictability of punitive damages awards might be a convincing argument to reconsider those rules or to urge a reexamination by the legislative authority." ___ U.S. at ___, 111 S.Ct. at 1056. It is clear that Mr. Justice Kennedy thought State legislatures had the power to regulate the awarding of punitive damages.
[8] In affirming the Haslip decision, the Supreme Court of the United States listed these factors in finding the Alabama procedure to comport with "due process" requirements: "The Alabama Supreme Court's post-verdict review ensures that punitive damages awards are not grossly out of proportion to the severity of the offense and have some understandable relationship to compensatory damages." It should be noted that the trial judge, in this case, found that the evidence at trial regarding the degree and nature of the defendant's conduct was not intentionally fraudulent, and the court considered the economic impact of the award on the defendant, the fact that the defendant was fully compensated for his loss, and that the defendant had attempted to settle the matter out of court, without success.
[9] In Haslip, in oral arguments before the Supreme Court of the United States, Haslip's counsel argued, in answering a question from a Justice, that "[t]he Hammond[-Green Oil Co.] standard of review which the Alabama Supreme Court has been adopting since 1986, expressly provides that jury verdicts will be independently reassessed by trial and appellate courts." (Emphasis added.)
[10] This paragraph, and most of this dissent, was written and circulated for this Court's March 5, 1991, General Conference, and was written weeks before the United States Supreme Court delivered its opinion in Pacific Mutual Life Insurance Co. v. Haslip, ___ U.S. ___, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). The result in that case is further proof of Mr. Ennis's proficient "lawyering."
[11] Broadway v. State, 257 Ala. 414, 60 So.2d 701 (1952) (legislature did not have this power); Ex parte Foshee, 246 Ala. 604, 21 So.2d 827 (1945) (legislature did have this power, with Justice Livingston dissenting); Ex parte Huguley Water System, 282 Ala. 633, 213 So.2d 799 (1968) (legislative enactment cannot disturb the functions and orderly processes of those courts that derive their existence from the Constitution, succeeding common law courts of historic origin); Ex parte Dozier, 262 Ala. 197, 77 So.2d 903 (1955) (legislature has the power to enact laws regulating any proceedings in the judicial system even though the laws relate to matters in which courts are exercising their inherent powers, so long as the legislation does not impair unduly an exercise of the judicial powers).
[12] Alabama Code 1975, § 6-11-23, refers specifically to "the trier of the fact." It does not specifically refer to cases in which the jury is the trier of the fact. However, in this dissent, I shall refer to the jury rather than "the trier of the fact" in some instances.
[13] Punitive damages have no connection with the equality of freedom and independence or the inalienable rights of life, liberty, and the pursuit of happiness (Article I, § 1); an inalienable and indefeasible right to change the form of the government of this state (Article I, § 2); freedom of religion (Article I, § 3); freedom of speech and of the press (Article I, § 4); freedom from unreasonable searches or seizures (Article I, § 5); the right of an accused in criminal prosecutions to be heard by himself and counsel, to demand the nature and cause of the accusation and to have a copy thereof, to be confronted by witnesses against him, to have compulsory process for obtaining witnesses in his favor, to have a speedy public trial before an impartial jury, not to be compelled to give evidence against himself, and not to be deprived of life, liberty, or property except by due process of law (Article I, § 6); the right not to be punished for violation of a law established and promulgated after the act or omission made an offense by that law (Article I, § 7); the right not to be proceeded against criminally for an indictable offense except in certain cases (Article I, § 8, amended by Amendment No. 37); freedom from double jeopardy (Article I, § 9); the right to prosecute or defend by oneself or by counsel any civil cause to which one is a party (Article I, § 10); the provision that "[t]he right of trial by jury shall remain inviolate" (Article I, § 11); the right of a jury to determine "the laws and the facts" in indictments for libel (Article I, § 12); the provision that "all courts shall be open; and [that] ... every person, for any injury done him, ... shall have a remedy by due process of law; and [that] right and justice shall be administered without sale, denial, or delay" (Article I, § 13); the provision that the state shall never be made a defendant in any court (Article I, § 14); the provision that neither excessive fines nor cruel or unusual punishment shall be inflicted (Article I, § 15); the right to reasonable bail except in capital cases (Article I, § 16); the guarantee that the privilege of habeas corpus shall not be suspended (Article I, § 17); the definition of, and type of evidence required for conviction of, treason against the state (Article I, § 18); the right not to be attainted of treason by the legislature (Article I, § 19); the right not to be imprisoned for debt (Article I, § 20); the provision that only the legislature shall have the power to suspend the laws (Article I, § 21); the prohibition against the legislature's enacting an ex post facto law, impairing the obligations of contracts, or making any irrevocable or exclusive grants of special privileges or immunities (Article I, § 22); the right of eminent domain (Article I, § 23); the provision that navigable waters shall remain free public highways (Article I, § 24); the right to peaceably assemble and petition for redress of grievances (Article I, § 25); the right of every citizen to bear arms (Article I, § 26); the provision that no standing army shall be kept without the consent of the legislature (Article I, § 27); the provision that no soldier shall be quartered in time of peace in any private home without the consent of the homeowner (Article I, § 28); the provision that no title of nobility or hereditary distinction shall be conferred (Article I, § 29); the provision that no citizen shall be exiled (Article I, § 30); the provision that temporary absence from the state shall not cause forfeiture of residence (Article I, § 31); the guarantee that slavery shall not exist (Article I, § 32); the provision that the privilege of suffrage shall be protected (Article I, § 33); property rights of aliens (Article I, § 34); the provision "[t]hat the sole object and only legitimate end of government is to protect the citizen in the enjoyment of life, liberty, and property, and [that] when the government assumes other functions it is usurpation and oppression" (Article I, § 35); or the provision "[t]hat this enumeration of certain rights shall not impair or deny others retained by the people; and [that], to guard against any encroachments of the rights herein retained, ... everything in this Declaration of Rights is excepted out of the general powers of government and shall forever remain inviolate" (Article I, § 36).
[14] Letter from John Adams to George Wythe, quoted by Harry J. Lambeth, The Lawyers Who Signed the Declaration of Independence, 62 A.B.A. Journal 869 (1976).